[No. G000032. Fourth Dist., Div. Three. May 31, 1985.]

In re the Marriage of MINERVA and ERNESTO W. GONZALEZ.
MINERVA GONZALEZ, Appellant, v.
ERNESTO W. GONZALEZ, Appellant.

**[Opinion certified for partial publication.*]**

---

*The introduction and part III only are certified for publication; parts I, II, and IV through VI do not meet the standards for publication (Cal. Rules of Court, rules 976(b) and 976.1).

COUNSEL

W. Michael Hayes for Appellant Wife.

Frank Moss for Appellant Husband.

OPINION

CROSBY, J.—Both parties appeal from the interlocutory judgment dissolving their 22-year marriage and dividing the community property. In the published portion of our opinion, we examine and reject husband's claim that the court improperly awarded a term life insurance policy on his life to wife as her separate property.

I*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### III

The court divided four life insurance policies. Each spouse received the whole life policy covering the other. In addition, the court determined two term policies on husband's life had no cash value but awarded one to each spouse. The term policy awarded to husband was described as a Veterans' Group Life Insurance Policy. The Prudential policy awarded to wife was originally a military policy but had been converted to an individual policy when husband retired and while the parties were still married.[1] Although the record is silent on the point, we presume conversion was effected pursuant to 38 United States Code section 777(e).[2] Husband questions only the award of the Prudential policy to wife.

■   Husband first urges preemptive federal law mandates a finding the policy was his separate property. But the decisions on which he relies, *Ridgway* v. *Ridgway* (1981) 454 U.S. 46 [70 L.Ed.2d 39, 102 S.Ct. 49] and *Wissner* v. *Wissner* (1950) 339 U.S. 926 [94 L.Ed. 1348, 70 S.Ct. 619], are distinguishable. At the time the marriages in those cases were dissolved, the insured service members had not, as here, converted the group military policies to individual policies. Husband does not cite, nor have we found, any authority for the notion that *converted* service policies retain their separate character. Thus, in our view, the court properly determined the individual Prudential policy, concededly purchased during the couple's marriage with community funds, was community property.

■   Husband next argues the term life insurance policy should have been awarded to him, without an offsetting award of assets to wife, because it had no cash surrender value. The question is of some novelty. We have

---

*See footnote, *ante,* page 1021.

[1] At oral argument, counsel agreed the policy awarded to husband had also been converted to an individual "civilian" policy when he began receiving retirement benefits. (See, e.g., 38 U.S.C. § 768(a)(4)(B).)

[2] 38 United States Code section 777(e) provides in part, "An insured under Veterans' Group Life Insurance shall have the right to convert such insurance to an individual policy of life insurance upon written application for conversion made to the participating company he selects and payment of the required premiums. The individual policy will be issued without medical examination on a plan then currently written by such company which does not provide for the payment of any sum less than the face value thereof or for the payment of an additional amount as premiums in the event the insured performs active duty, active duty for training, or inactive duty training. . . ."

found little authority in this state treating with the divisibility of term life insurance policies in dissolution actions.

In the case of *In re Marriage of Lorenz* (1983) 146 Cal.App.3d 464 [194 Cal.Rptr. 237], the Court of Appeal confirmed husband's term life insurance policy and accrued vacation time, both acquired during marriage, as his separate property because the assets had no discernible "monetary value." The court did acknowledge "that certain intangible assets are property under community property statutes. (See, for example, *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]: nonvested pension rights; *In re Marriage of Forest* (1979) 97 Cal.App.3d 850, 852 [159 Cal.Rptr. 229]: contingent retirement benefits; *In re Marriage of Mantor* (1980) 104 Cal.App.3d 981 [164 Cal.Rptr. 121]: ERISA retirement benefits.) However, each of those assets, although intangible, was acknowledged to have economical [*sic*] monetary value. In order to qualify as property, within the meaning of our community property laws, an asset must be 'of such a character that a monetary value for division with the other spouse can . . . be placed upon it.' (*Todd* v. *Todd* (1969) 272 Cal.App.2d 786, 791 [78 Cal.Rptr. 131].) [¶] No such monetary value can be placed upon the assets claimed here by wife. The mere fact that these assets are of benefit to husband does not compel the conclusion that [they] must, or can, be divided." (*Id.,* at p. 467.)

*Lorenz* is simply incorrect in the assertion that assets such as term life insurance and accrued vacation time have no economic value, particularly if the test is the amenability of the asset to valuation. For example, the Supreme Court has specifically held to the contrary in another context in the case of vacation time: "When considering the meaning of the phrase 'vested vacation time' . . . it is important to keep in mind the nature of vacation pay. It is established that vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed. [Citations.]" (*Suastez* v. *Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 779 [183 Cal.Rptr. 846, 647 P.2d 122, 33 A.L.R.4th 254].) The court concluded, "The right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered." (*Id.,* at p. 784.) There is no reason deferred wages cannot be commuted to present value and divided.

Similarly, pension rights "represent a form of deferred compensation for services rendered [citation], [and] the employee's right to such benefits is a contractual right, derived from the terms of the employment contract. Since a contractual right is not an expectancy but a chose in action, a form of property [citations] . . . an employee acquires a property right to pension benefits when he enters upon the performance of his employment contract."

(*In re Marriage of Brown, supra,* 15 Cal.3d 838, 845.) ■ Thus, pension benefits earned during the marriage, whether vested or not, comprise a community asset subject to division upon dissolution.

■ Why, then, should term life insurance be labeled a mere expectancy rather than property divisible upon dissolution? If ease of valuation has something to do with the definition of divisible community property, as *Lorenz* suggests, the Mona Lisa could not qualify because it is literally priceless. Yet it would be ludicrous to suggest such property should be awarded to one spouse without a corresponding credit to the other, however arbitrarily determined. But, apart from *Lorenz,* no California case appears to have examined the question of term life insurance directly. However, in Markey, California Family Law, Practice and Procedure, section 24.45[3][e], pages 24-55 and 24-56, the author notes, "Although there are no cases on the subject, it could be argued that policies are worth more than their cash surrender value, or in the case of term insurance, more than nothing, based on their replacement value. Replacement value may be significantly higher than cash surrender value in situations where the insurability of the insured is lessened because of advancing age or declining health, and the existing policy cannot be cancelled or contains a guaranty of insurability." (*Id.,* at pp. 24-55 and 24-56.) Now there *is* a case on point, for we concur in Markey's view.

The issue did arise, albeit obliquely, in *Biltoft* v. *Wootten* (1979) 96 Cal.App.3d 58 [157 Cal.Rptr. 581]. There, premiums for husband's term insurance were deducted from his salary. The parties separated, and husband changed the beneficiary designation from his wife to his children. He died while the dissolution action was pending. One child claimed wife had no community interest in the *proceeds* of the policy because (1) "term insurance only provides insurance for each premium period and that therefore each premium payment is a new contract and purchases a new policy of insurance" (*id.,* at p. 60) and (2) "no person has an interest in a term life insurance policy beyond the date a premium is due, and . . . if decedent had permitted the policy to lapse, [wife] would have no claim because no property right arises until the insured dies." (*Id.,* at at p. 61.) The court disagreed, noting, "if the decedent had waited until separation to purchase the . . . policy, it is unlikely that he would have been able to obtain coverage for the same premium on the same terms of eligibility. The rights of the beneficiaries with respect to this policy were dependent on the fact that the decedent secured the policy during the marriage. The decedent's community efforts for the 20 years prior to the separation maintained the policy in force." (*Ibid.*) Accordingly, wife was given a proportionate share of the proceeds based on the percentage of premiums paid from community earnings.

Concededly, the issue in *Biltoft* was whether wife, upon husband's *death*, was entitled to a share of the policy proceeds. But in dictum, the court also addressed the issue of division of a term life insurance policy in dissolution proceedings: "There is no reason, as daughter contends, for a trial court to retain jurisdiction until the policy owner dies. The court in the dissolution action may simply determine the value of the community interest in the same way it does any other rights in community property. The value of those rights might well depend upon the nature of the benefits realized as a result of the acquisition of the contract during the marriage." (*Id.*, at p. 62.) We find this analysis compelling and must conclude the term life insurance policy is divisible property with an ascertainable value—not a mere expectancy.

Here, as in *Biltoft,* the parties acquired specific rights because the policy was obtained during marriage with community funds. Undoubtedly the premium rate was very favorable, and pursuant to federal statute, husband was not required to establish medical eligibility for coverage. (38 U.S.C. § 777(e).) We are confident the same policy acquired today, assuming husband is still insurable, would cost considerably more.

The valuation and division of a term policy does, perhaps, pose a greater challenge than does a whole life policy, whose cash surrender value provides a convenient, although not necessarily accurate, means of present valuation. But the task is not all that difficult. As Markey has suggested, replacement cost of a term policy may be one method of valuation, as might the sum of the community's contributions.

Where, as here, it is possible to award similar policies to each spouse, valuation is greatly simplified. Nevertheless, in order to properly determine the value of a term life insurance policy, the trial court might examine several factors, such as the face value of the policy, the amount of the premium, the life expectancy of the insured, whether the policy is convertible to whole life insurance, replacement cost, and when, if ever, the policy "vests" and is deemed fully paid. The appellate record in this case indicates only that the Prudential policy awarded to wife has a face value of $25,000, while the term policy confirmed as husband's separate property is in the amount of $20,000. No evidence was presented as to other elements which might affect valuation of the policies, however, as the trial court concluded, erroneously, that neither had value.

Apart from division of community property, there is an entirely different—and equally compelling—justification for the award of the term policy to the wife: A life insurance policy in the hands of the noncovered spouse is a useful form of security for a reserved spousal support obligation. As one family law commentator put it, where "the cash surrender value . . .

is nonexistent, [term life insurance can nevertheless] be useful in achieving practical solutions to property division and support problems." (Walzer, Cal. Marital Termination Settlements (Cont.Ed.Bar 1971) § 9.2, p. 261.) Here, although neither party actually received spousal support, the court did expressly and appropriately reserve jurisdiction "for each of the parties" to this lengthy marriage; thus wife retained an insurable interest in husband's life.

In addition, Civil Code section 4801.4 provides, "For the purposes of Section 4801 [orders for spousal support], where it is just and reasonable in view of the circumstances of the respective parties, the court, in determining the needs of a supported spouse, may include an amount sufficient to maintain insurance for the benefit of the supported spouse on the life of the spouse required to make the payment of support so that the supported spouse will not be left without means for support in the event that the order for support is terminated by the death of the party required to make the payment of support." Thus, the award of the policy to wife is thoroughly defensible on alternative theories. Here, the policy appears to have been awarded as property, rather than spousal support; but, as discussed earlier, the evidence on the record before us is insufficient to confirm the respective values of the two term policies. We simply cannot determine whether "a substantially equal division of the property" was effected. (Civ. Code, § 4800, subd. (b)(1).)

Consequently, the judgment is reversed and the cause remanded for a determination of the relative values of the term life insurance policies and any readjustment of the distribution of the community property which might be required. (*In re Marriage of Jacanin* (1981) 124 Cal.App.3d 67, 71 [177 Cal.Rptr. 86].)

IV*

. . . . . . . . . . . . . . . . . . . . . .

Judgment reversed and remanded in accordance with the views expressed above concerning the term life insurance policies and military pension. In

---

*See footnote, *ante,* page 1021.

all other respects the judgment is affirmed. Each party shall bear his or her own costs on appeal.

Trotter, P. J., and Wallin, J., concurred.