OPINION OF THE COURT
H. Patrick Leis, III, J.
The central issue in this divorce action is whether or not the defendant husband’s SCATT benefits constitute marital property subject to equitable distribution. For the reasons set forth infra, the court concludes that SCATT benefits are marital property.
*853 The parties were married on June 16, 1962. This action for divorce was commenced on December 21, 1988. The plaintiff wife is 51 years old and the defendant is 50. The parties have three children, Daniel, age 27, born on June 23, 1963, Thomas, age 25, born on August 9, 1965 and Michael, age 20, born on July 31, 1970. When the parties first married they both worked at Food Fair. Plaintiff was a cashier and the defendant was a manager. The plaintiff stopped working at Food Fair in 1964 (just after Thomas was born) and returned to work part time in 1980 as a school cafeteria aid.
Plaintiff testified that she quit school in the 11th grade and reads on a 7th or 8th grade level. The defendant completed college during the course of the marriage.
The plaintiff testified that she suffers from a number of health problems. She has varicose veins and had an operation on one of her veins in 1972. She testified that as a result of her varicose veins she is unable to stand for over four hours. In 1971 plaintiff had a gall bladder operation and suffered from adhesions thereafter. She suffers from cold hands and feet (Reynard’s Syndrome). She also has a pinched nerve in her neck. At her present place of employment (as a kitchen aid in a school cafeteria) she works 12 months a year, four hours a day. According to the plaintiff’s 1989 W2 form she earned $5,088 in 1989. The plaintiff also suffers from emotional problems, anxiety and nervousness which has required treatment.
The defendant’s health is good, although he indicates that he suffers from high blood pressure and has a history of heart disease and strokes in his family. Defendant’s father is still alive at age 76 and his mother is still alive at age 75. The defendant testified that he has arthritis of the knee, a herniated disc and glaucoma. None of these conditions, however, have prevented him from working.
In December 1963 defendant joined the Suffolk County Police Department. In 1970 he was promoted to sergeant, in September 1975 to lieutenant and in October 1983 he was promoted to the rank of captain. Each of these promotions was based on the defendant’s placement on civil service exams. In July 1986 defendant was promoted to deputy inspector and in May 1988 to full inspector. Defendant testified that he received the last two promotions based on his performance as a captain, and on the recommendations of his superiors.
The parties purchased the marital home in 1970 for approx *854 imately $34,000. It is presently valued at $145,000 (according to the credible testimony of Mr. Potter, a real estate appraiser). It has two mortgages outstanding, one for $12,700 and a second home equity loan for $17,894. Pursuant to the parties’ stipulation, the court directs that the house be sold and the net proceeds divided evenly.
Although plaintiff did not work outside the home during most of the marriage, she did make indirect contributions as a wife, mother and homemaker. She kept the marital home clean, cared for the parties’ three children (two of whom have diabetes), drove the children to activities, and prepared special dishes based on the particular needs of each family member. Her indirect contributions during this 26-year marriage warrant her sharing equally in all of the marital assets with the exception of the defendant’s SCATT benefits.
SCATT BENEFITS
Sgt. George Dentel (who has served in the personnel section of the Suffolk County Police Department and processed retiring police officers) testified that SCATT is a name given to the following benefits which police officers are entitled to receive upon retirement: (1) Unused sick time; (2) Unused vacation time; (3) Personal leave; (4) Holiday time; (5) Extra days given to veterans; (6) Longevity pay; (7) Unpaid compensatory time.
According to Sgt. Dentel the records of the police department indicate that as of December 21, 1988 (the commencement of this action) the defendant was entitled to: (1) 260 days of sick time; (2) 59 vacation days; (3) 1 personal leave day; (4) No holiday time; (5) No extra days given to veterans; (6) No longevity pay (as he had already been paid for that in April 1991); (7) No unpaid compensatory time. According to Sgt. Dentel, SCATT benefits are paid when a member retires or dies. Based on the defendant’s salary as of December 1988, if the defendant had retired at the commencement of this action, he would have been paid $281 for each unused sick day, vacation day and personal leave day.
Assistant Deputy Police Commissioner Robert Kearon also testified with respect to the defendant’s SCATT benefits. Commissioner Kearon testified that he represents the police department in contract negotiations with the county. According to the Commissioner, SCATT benefits are created by contract and are subject to negotiation each time a new contract is negotiated. According to the Commissioner, SCATT benefits *855 could be bargained away in future contracts, even benefits that have already accrued.
Commissioner Kearon also testified that even if the county agreed to leave SCATT benefits in the 1992 contract, due to the present state of Suffolk County’s economy, the Legislature could refuse to ratify the contract as long as SCATT benefits were included. This would result in the matter going to interest arbitration under the Taylor Law. The issue this court must address is whether or not SCATT benefits are marital property.
Marital property is defined as all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action (Domestic Relations Law § 236 [B] [1] [c]). As there are no cases dealing specifically with SCATT benefits the court has looked to cases dealing with pensions for guidance in determining whether or not SCATT benefits are marital property.
Vested rights in a noncontributory pension plan are marital property to the extent that they were acquired between the date of the marriage and the commencement of a matrimonial action, even though the rights are unmatured at the time the action is begun. (Majauskas v Majauskas, 61 NY2d 481 [1984].)
In arriving at this conclusion, the court in Majauskas (supra) reasoned that employees’ rights in pension plans are incremented for each month or year of service. For each month or year of service the employee receives a credit which will enter into the computation of what the plan will pay out. "Until he has been employed for a stated period of years [an employee’s] interest in the plan is defeasible; if he is fired, or leaves voluntarily * * * neither he nor his family will receive anything from the plan, unless the plan is contributory, in which event he will usually be entitled to withdraw his contributions together with the interest they have earned. Once that period is past, his rights are said to be vested, which means that if he is fired, or leaves, he can, when he reaches retirement age, draw a pension even though no longer employed” (Majauskas v Majauskas, supra, at 490.) Upon retirement the employee’s rights are said to be matured and payments will be made under one of several options (Majauskas v Majauskas, supra, at 490). "Whether the plan is contributory or noncontributory, the employee receives a lesser pres *856 ent compensation plus the contractual right to the future benefits payable under the pension plan. The value of those contractual rights will vary depending upon the number of years employed, but where, as here, the rights are vested, or where they are matured, they have an actuarially calculable value. To the extent that they result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property.” (Majauskas v Majauskas, supra, at 491-492.)
Even nonvested pension benefits, which are contingent on the defendant’s continued employment for a stated number of years, if attributable to employment during the marriage, constitute marital property. (Damiano v Damiano, 94 AD2d 132 [2d Dept 1983].)
SCATT benefits can easily be equated with pension benefits and fit well within the definition of property employed in Majauskas (supra). SCATT benefits are negotiated by contract and, like pension benefits, clearly are contract rights received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living. As such, they would be property (under Majauskas) once they have accrued or become indefeasible (i.e., reached a status where if the employee leaves employment, he can obtain the benefits earned at some future date). Here SCATT benefits are indefeasible once earned (unless used up by the employee or eliminated by future contract). They are thus vested as that term is used in Majauskas. But even if the court were to consider them to be nonvested, under Damiano (supra), they would be marital property subject to distribution once they matured.
SCATT benefits, like pension benefits, are earned in increments, as vacation and sick time (which is not used) accrues. All that an employee need do to collect these benefits, once they have accrued, is to retire. The defendant was eligible to retire in December 1988, at the commencement of this action.
Although SCATT benefits are contingent, in a sense, on the employee not using all sick and vacation time before retirement, and on the county and PBA not removing them from future contracts, they exist today and existed as of the date of the commencement of this action, as a contract right received *857 by the defendant in lieu of higher compensation. Their contingent nature may be analogized to the contingent nature of nonvested pension benefits. (See, Rodgers v Rodgers, 98 AD2d 386 [2d Dept 1983].) They are property which is indefeasible but contingent on the employee not using up the sick and vacation time before actual retirement, and the county and PBA not negotiating these benefits out of future contracts. If the defendant were to retire today, he would be entitled to receive payment for SCATT benefits. Clearly these benefits exist as property, acquired during the course of the parties’ marriage and as such must be considered by this court as a marital asset.
The defendant was eligible to retire in December 1988 (at the commencement of this action) and receive payment for 260 days at $281 per day ($73,060) plus 59 vacation days at $281 per day ($16,579) and 1 personal leave day at $281 per day for a total of $89,920.
The fact that the defendant has not chosen to retire does not alter the fact that he is entitled contractually to collect this money when he does retire.
Because it is possible that the defendant could suffer a catastrophic illness and use up accumulated sick and vacation time, or the county could, before the defendant’s retirement, eliminate SCATT benefits, it would be inappropriate for the court to grant the plaintiff a lump-sum distributive award relating thereto.
The court concludes that based on the plaintiff’s indirect contributions as a wife and homemaker during the course of the marriage, she should receive one fourth (25%) of the defendant’s unused sick, vacation and personal leave pay acquired during the parties’ marriage up until the commencement of this action. According to the uncontroverted testimony of the defendant’s expert Mr. Warrick, had the defendant retired in 1988, at the time of the commencement of the action, he would have paid taxes on the $89,639 that he was eligible to receive as SCATT benefits. Mr. Warrick testified that the defendant would have paid $21,839 in Federal taxes, $6,300 in State taxes and $3,379 in Social Security taxes for a total of $31,518 leaving $58,121 after taxes were paid. Plaintiff is awarded one fourth of this tax-effected $58,121 or $14,530.25. This award, however, is contingent. If there are no benefits remaining at the time the defendant retires, then the plaintiff will receive nothing.
*858 If the defendant’s SCATT benefits, in the future, are reduced below the value of the sick and vacation time accrued during the marriage, to wit: $89,639, by the defendant’s use of sick and vacation time, then the plaintiff shall receive one fourth of whatever benefits remain. The court directs that any sick or vacation time which defendant may use up in the future first be deducted from any sick time which was accumulated after the commencement of the instant action.
In deciding to grant plaintiff one fourth of the defendant’s SCATT benefits, the court has considered the fact that plaintiff’s indirect contributions as a wife and homemaker were less substantial to the defendant’s acquisition of SCATT benefits than they were to the defendant’s acquisition of other marital assets. The court has also considered the fact that a higher percentage award would be more likely to motivate the defendant to use up his accrued sick time and vacation time before retirement (thereby leaving little or nothing for the plaintiff to share in).