2014 CO 3

**IN RE the MARRIAGE OF Marta Doris CARDONA, Petitioner**

**and**

**Jaime Felipe CASTRO, Respondent.**

**Supreme Court Case No. 11SC59**

Supreme Court of Colorado.

January 13, 2014

Joseph H. Antolinez, Melissa E. Miller, Antolinez Miller, LLC, Littleton, CO, for Petitioner.

Karin Johnson Chatfield, Karin Johnson Chatfield, LLC, Denver, CO, for Respondent.

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶ 1 In this dissolution of marriage proceeding, we granted certiorari review to consider whether accrued vacation and sick leave may be considered marital property subject to division under section 14–10–113, C.R.S. (2013), of the Uniform Dissolution of Marriage Act ("UDMA"). In this case, the trial court entered an order dividing the value of the husband's accrued vacation and sick leave as part of the marital estate. The husband appealed and the court of appeals reversed, holding that a spouse's accrued leave time is not marital property subject to distribution in dissolution proceedings. *In re Marriage of Cardona & Castro,* —— P.3d ——, No. 09CA1996, 2010 WL 5013737 (Colo.App., Dec. 9, 2010).

¶ 2 We now hold that where a spouse has an enforceable right to be paid for accrued vacation or sick leave, as established by an employment agreement or policy, such accrued leave earned during the marriage is marital property for purposes of the UDMA. Where the value of such leave at the time of dissolution can be reasonably ascertained, it must be equitably divided as part of the marital estate. However, in the event that a court cannot reasonably ascertain the value of such leave at the time of dissolution, the court should consider a spouse's right to such leave as an economic circumstance of the parties when equitably dividing the marital estate. In this case, we conclude that the trial court erred in considering the value of the husband's accrued leave as part of the marital estate because no competent evidence was presented to establish that the husband had an enforceable right to payment for such leave. We therefore affirm the court of appeals' judgment on narrower grounds.

## I.

¶ 3 Marta Doris Castro ("Wife") and Felipe Cardona ("Husband") co-petitioned for dissolution of their marriage in May 2007. In its August 2009 Permanent Orders, the trial court divided Husband's accrued, unused vacation and sick leave as marital property.

¶ 4 Wife first raised the issue of Husband's accrued leave in a demonstrative exhibit used during opening statements, titled "Petitioner's Proposed Division of Assets/Debt/Arguments Associated therewith." A note at the bottom of the exhibit indicated that Husband held accrued vacation and sick leave that Wife valued at over $23,000, but that Wife did not seek division of that amount if she was permitted to move with the children to Florida:

Not included in the above numbers is accrued leave and sick time for [Husband] totaling 452 hours @ 51.40 per hour. The total value of this time is $23,232.80. [Wife] is not requesting 50% of this amount if she is permitted to go to Florida

as [Husband] could use this time to do parenting time exchanges and exercise parenting time in Florida.

During opening statements, Wife's counsel asked the court to treat Husband's leave time not as a marital asset, but as an economic circumstance, again noting that Husband might need to use that leave to visit the children:

> [W]hat's not taken into account ... [is that] [t]here's an additional amount of 452 hours of [leave] time that [Husband] has accrued that has the substantial value of about $23,000.00. She's saying you know if we go to Florida, he'll need that time[.] *I'm not asking for division of that.* He'll need that time, he has ample time to visit his kids, 452 hours he can take a lot of breaks, a lot of time to see his kids in the coming years okay.

(Emphasis added.)

¶ 5 Husband's accrued leave was reflected in his most recent pay stub attached to his sworn financial statement. The pay stub indicated that he had an available total of 279.76 hours of vacation time and 171.85 hours of sick time, for a total of 451.61 hours of accrued leave. The pay stub did not indicate the cash value of the accrued leave, or whether Husband was entitled to cash payment for any portion of the leave.

¶ 6 At the permanent orders hearing, Wife's attorney called Husband to testify to the amount of his accrued vacation and sick leave, the rate at which it accrued, and the fact that the accrued time rolled over from year to year. During this exchange, Wife's attorney asked Husband, "If your job was terminated today they would pay you that accrued leave? You'd be entitled to that?" Husband responded, "According to the law I think that's the way it works yes." This statement was the only evidence presented regarding Husband's potential entitlement to payment for the accrued leave.

¶ 7 Nearly a year after the hearing, Wife filed her proposed permanent orders. Contrary to the position she took at the hearing, Wife requested, among other things, that the court award her half of Husband's accrued leave, which Wife valued at $23,232.00. In its permanent orders, the trial court allowed Wife to relocate to Florida with the children. The trial court also divided the value of Husband's accrued vacation and sick leave as part of its division of the marital estate and required Husband to pay wife $11,616.00 for her "interest in this pay."

¶ 8 On appeal, Husband argued that accrued leave is not marital property. A divided panel of the court of appeals agreed and reversed. The majority reasoned that Husband's accrued leave was analogous to unvested stock options or an interest in a discretionary trust and "is thus not property subject to distribution on dissolution." *Cardona*, —— P.3d at ——, 2010 WL 5013737, at *4. The court of appeals remanded with directions to the trial court to reconsider the marital property division without considering Husband's accrued vacation and sick time. *Id.* at ——, 2010 WL 5013737 at *5. Judge Dailey dissented, perceiving no error in the trial court's treatment of Husband's accrued leave time as marital property. *Id.* at —— ——, 2010 WL 5013737 at *9–10. We granted certiorari review.[1]

## II.

¶ 9 The equitable division of marital property is a matter within the trial court's discretion. *In re Marriage of Hunt*, 909 P.2d 525, 538 (Colo.1995). However, the determination of whether a purported asset constitutes marital property under the UDMA is a mixed question of fact and law. We defer to the trial court's findings of fact unless they do not find support in the record. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo.2001). We review purely legal issues, such as this matter of first impression, de novo. *In re Marriage of Ciesluk*, 113 P.3d 135, 141 (Colo.2005).

## III.

¶ 10 We are asked to determine whether a spouse's accrued vacation and sick

---

1. We granted Wife's petition for a writ of certiorari on the following issue:

    Whether the court of appeals erred in finding that accrued vacation and sick leave time is not marital property subject to division pursuant to section 14–10–113, C.R.S. (2010).

leave is marital property subject to equitable division under the UDMA. This question presents a difficult issue, and one of first impression in Colorado. As the court of appeals recognized, courts in other jurisdictions are split on the issue. *Cardona,* ——— P.3d at———, 2010 WL 5013737, at *3.

¶ 11 In Colorado, section 14–10–113, C.R.S. (2013), of the UDMA requires the court to make an equitable distribution of marital property after considering all relevant factors, including the contributions of each spouse, the value of property set apart to each spouse, the economic circumstances of each spouse, and any increase, decrease, or depletion in the value of any separate property during the marriage. *Balanson,* 25 P.3d at 35; *Hunt,* 909 P.2d at 529; *In re Marriage of Jones,* 812 P.2d 1152, 1154 (Colo. 1991).

¶ 12 We require a two-step analysis to determine whether an interest is "marital property" subject to equitable division in a dissolution proceeding: "first, a court must determine whether an interest constitutes 'property'; if so, the court must then determine whether the property is marital or separate." *Balanson,* 25 P.3d at 35 (citing *Hunt,* 909 P.2d at 529).[2] Once an interest is deemed to be marital property, the court must value the property in order to make an equitable distribution. *Id.* at 36. Under section 14–10–113(5), C.R.S. (2013), property shall be valued as of the date of the decree or the date of the hearing on disposition of property if such hearing precedes the date of the decree.

¶ 13 This case concerns the first step of the marital property analysis: whether accrued vacation and sick leave is "property" for purposes of the UDMA. Although the UDMA does not define the term "property," we have previously noted that the legislature intended the term "property" under the UDMA to be broadly inclusive. *Balanson,* 25 P.3d at 36

(citing *In re Marriage of Graham,* 194 Colo. 429, 432, 574 P.2d 75, 76 (1978), *disapproved of on other grounds by In re Marriage of Olar,* 747 P.2d 676, 682 (Colo.1987)). We have also held that enforceable contractual rights constitute property, but interests that are speculative are "mere expectancies" that are not property. *Id.* (citing *In re Marriage of Miller,* 915 P.2d 1314, 1318 (Colo.1996)); *In re Marriage of Jones,* 812 P.2d at 1156; *In re Marriage of Grubb,* 745 P.2d 661, 664 (Colo.1987).

¶ 14 In resolving this issue of first impression, we consider case law from other jurisdictions, as well as relevant Colorado precedent. We conclude that where a spouse has an enforceable right to be paid for accrued vacation or sick leave, as established by an employment agreement or policy, such accrued leave earned during the marriage is marital property for purposes of the UDMA. Where the value of such leave at the time of dissolution can be reasonably ascertained, it must be equitably divided as part of the marital estate. However, where a court cannot reasonably ascertain the value of such leave at the time of dissolution, the court should consider a spouse's right to such leave as an economic circumstance of the parties when equitably dividing the marital estate. In this case, no competent evidence was presented to establish that Husband had an enforceable right to payment for his accrued leave. Thus, we conclude that the trial court erred in considering the purported cash value of such leave as part of the marital estate. We therefore affirm the judgment of court of appeals on narrower grounds.

### A.

¶ 15 Courts in other jurisdictions disagree on whether accrued leave constitutes marital property subject to equitable division in a dissolution proceeding. Our review of these

---

**2.** Section 14–10–113(3), C.R.S. (2013), incorporates a presumption that all property acquired by a spouse subsequent to the marriage is "marital" property. *Balanson,* 25 P.3d at 36; *Hunt,* 909 P.2d at 529. This presumption may be overcome by a showing that the property was acquired by a method in section 14–10–113(2), C.R.S. (2013), indicating that the property is separate, namely, property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired either prior to the marriage or by gift, bequest, devise or descent; property acquired after a decree of legal separation; and property excluded by a valid agreement between the parties.

decisions reveals that whether courts treat a spouse's accrued leave as marital property generally depends on whether the court conceives of such leave as an alternative form of wages, or instead as a form of deferred compensation for services performed.

¶ 16 Courts that conceive of accrued vacation and sick leave as "really only an alternative form of wages" intended to "replace[ ] wages on the days when the worker does not work" have concluded that such accrued leave is not marital property. *Thomasian v. Thomasian*, 79 Md.App. 188, 556 A.2d 675, 681 (1989); *see also In re Marriage of Abrell* 236 Ill.2d 249, 337 Ill.Dec. 940, 923 N.E.2d 791, 799–800 (2010) (agreeing with the reasoning of *Thomasian* and intermediate appellate court's analysis that husband's accumulated vacation and sick leave was not property, but rather, alternative wages meant to be paid when the wage earner is unable to work or decides to take a vacation); *Bratcher v. Bratcher*, 26 S.W.3d 797, 800–01 (Ky.Ct.App.2000) (adopting Maryland's approach in *Thomasian*); *Lesko v. Lesko*, 184 Mich.App. 395, 457 N.W.2d 695, 702 (1990) (Holbrook, J. dissenting) ("Paid vacation and sick leave is in reality an alternative form of wages in as much as it replaces wages on days when the worker does not work.").

¶ 17 Courts that have held that accrued leave is not property also stress that the accrued leave may not be presently convertible to cash, and may be dissipated when the employee spouse uses the leave time. *Abrell*, 337 Ill.Dec. 940, 923 N.E.2d at 800; *Akers v. Akers*, 729 N.E.2d 1029, 1032–33 (Ind.Ct. App.2000); *Thomasian*, 556 A.2d at 681; *see also Lesko*, 457 N.W.2d at 702 (Holbrook, J., dissenting). These courts further note that certain types of leave, such as sick leave, may be used only in the event of illness. *Akers*, 729 N.E.2d at 1033. Consequently, these courts consider such accumulated leave to have, at most, only a future value that is "indeterminate and speculative." *Id.* at 1032; *see also Abrell*, 923 N.E.2d at 801 ("the value of accrued vacation and sick days is speculative and uncertain until a party actually collects compensation for those days at retirement or termination of his employment"); *Preiss v. Preiss*, 238 Wis.2d 368, 617 N.W.2d

514, 517 (Wis.Ct.App.2000) (reasoning that spouse's sick leave account was not a marital asset because it had no cash value, could not be sold or transferred, and therefore had no fair market value). In short, these courts reason that a spouse's accumulated vacation and sick leave is not marital property chiefly because it is more difficult to value than pension or retirement benefits. *Bratcher*, 26 S.W.3d at 800 (citing *Thomasian*, 556 A.2d at 681).

¶ 18 By contrast, courts that view accumulated leave as deferred compensation for services performed have concluded that unused leave is marital property. *Schober v. Schober*, 692 P.2d 267, 268 (Alaska 1984) (reasoning that such leave " 'constitutes deferred wages for services rendered' ") (quoting *Suastez v. Plastic Dress–Up Co.*, 31 Cal.3d 774, 183 Cal.Rptr. 846, 647 P.2d 122, 128 (1982)); *In re Marriage of Gonzalez*, 168 Cal.App.3d 1021, 214 Cal.Rptr. 634, 637 (1985) (" '[V]acation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed.' ") (quoting *Suastez*, 183 Cal.Rptr. 846, 647 P.2d at 125); *In re Marriage of Williams*, 84 Wash.App. 263, 927 P.2d 679, 683 (1996) ("Vacation pay is a form of deferred earning."). Under this view, where an employee spouse has a "vested right to receive payment" for accrued vacation or sick days, such accrued leave is property "because [the accrued vacation or sick days] are, in effect, a debt due to him as part of the compensation he has earned for work he has already performed." *Abrell*, 337 Ill. Dec. 940, 923 N.E.2d at 802–03 (Garman, J. dissenting). In this respect, accrued leave is akin to other types of deferred compensation, such as a pension. *Id.* A spouse who has accrued paid vacation or sick leave "has already earned the remuneration, but will not realize the benefit until he either uses the time for a permissible purpose or is paid the value of the accrued days upon termination of employment." *Id.*, 337 Ill.Dec. 940, 923 N.E.2d at 804. Regardless, as reasoned by the New Mexico Court of Appeals, a spouse's paid leave accrued during the marriage benefits the marital community: "If taken during marriage, leave time devoted to vacation or to recovery from illness benefits the community. If not taken, leave that accumulates

will be available to benefit the community in the future." *Arnold v. Arnold*, 134 N.M. 381, 77 P.3d 285, 290 (N.M.Ct.App.2003). Thus, accrued leave earned with a spouse's labor and effort during the marriage "merits no different treatment than retirement, pension, or unvested stock options earned during marriage as a result of the expenditure of community labor." *Id.*

¶ 19 Courts that conclude that accrued leave is property consistently require the employee spouse to have a vested or contractual right to receive payment for such leave. *See, e.g., Schober*, 692 P.2d at 267–68 (concluding that unused leave was a marital asset where leave was earned under a collective bargaining agreement that permitted up to sixty hours of unused leave to be converted to cash each year and permitted the remainder to be converted to cash upon termination of employment); *Gonzalez*, 214 Cal.Rptr. at 637 (concluding that accrued leave constitutes deferred wages for services rendered where the right to a paid vacation is " 'offered in an employer's policy or contract of employment' ") (quoting *Suastez*, 183 Cal. Rptr. 846, 647 P.2d at 128); *Dye v. Dye*, 17 So.3d 1278, 1281 (Fla.Dist.Ct.App. 2009) (concluding that unused vacation and sick leave is a marital asset subject to equitable distribution where there is a contractual payout provision for the cash value of such leave); *Lesko*, 457 N.W.2d at 699 (concluding that "banked" vacation and sick leave was a marital asset where spouse was entitled to receive cash payment for unused leave upon retirement); *Arnold*, 77 P.3d at 290 (concluding that husband's "contractual [leave] benefit" was marital property); *see also Abrell*, 337 Ill.Dec. 940, 923 N.E.2d at 803 (Garman, J. dissenting) (reasoning that "[w]hether such accrued days are property depends on whether the employee spouse has a vested right to receive payment for them").

¶ 20 Courts have also held that accrued leave is property where the value of the leave could be reasonably ascertained—because, for example, the spouse's employment contract provided guidance on the valuation method for the accumulated leave, *see Dye*, 17 So.3d at 1281; because the spouse's accumulated leave could be converted to cash at any time during the spouse's employment, *see Forrester v. Forrester*, 953 A.2d 175, 186–88 (Del.2008); because the spouse was eligible for retirement at the time of dissolution (and thus contractually eligible to receive payment for the accumulated leave), *see Grund v. Grund*, 151 Misc.2d 852, 573 N.Y.S.2d 840, 843–44 (N.Y.Sup.Ct.1991); or because the spouse had already received a cash payout of the accumulated leave, *see Overstreet v. Overstreet*, 144 S.W.3d 834, 840 (Ky.App.2003); *see also Abrell*, 337 Ill.Dec. 940, 923 N.E.2d at 801 ("We agree that when a party has actually received payment for vacation and/or sick days accrued during marriage prior to a judgment for dissolution, the payment for those days is marital property subject to distribution in the marital estate. Under that scenario, the vacation and/or sick days have been converted to cash, the value of which is definite and certain.").

## B.

¶ 21 Although this court has not previously considered whether accrued leave constitutes property for the purposes of the UDMA, we have examined whether other types of interests—such as retirement benefits, stock options, and trust interests—qualify as property. Our cases reflect that interests that are enforceable contractual rights constitute "property" for purposes of the UDMA, but interests that are speculative are "mere expectancies." *Balanson*, 25 P.3d at 35 (citing *Miller*, 915 P.2d at 1318; *Jones*, 812 P.2d at 1156; *Grubb*, 745 P.2d at 664).

¶ 22 For example, in *Grubb*, we held that a spouse's vested right to pension benefits is marital property subject to equitable distribution in a dissolution proceeding, where the pension plan has been funded by employee and/or employer contributions during the marriage. 745 P.2d at 665. There, we observed that "[r]etirement benefits, far from being a mere gratuity deriving from the employer's beneficence, are nothing less than a form of deferred compensation—that is, they are consideration for past services performed by the employee and constitute part of the compensation earned by the employee." *Id.* at 664. We considered a pension right to be "vested" when the employee has completed

the minimum terms of employment necessary to be entitled to receive retirement pay at some point in the future, and observed that a vested pension right "matures" when the employee reaches retirement age and elects to retire. Accordingly, we acknowledged that the receipt of pension benefits under a vested but unmatured plan is contingent on some future event. *Id.* at 665. We reasoned, however, that such a contingency does not render the employee's interest in those benefits so speculative as to remove it from the category of property under the UDMA. *Id.* Because the employee's right to retirement benefits derives from his contract of employment, "[s]uch a right is not a mere expectancy but, rather, is an enforceable contractual right" that is recognized as a form of property. *Id.* We concluded that the controlling consideration is whether an employee "has a right to receive payment at some time in the future," and that to exclude such a vested right from the category of marital property would "ignore[ ] the true character of that interest as remuneration for past services." *Id.*

¶ 23 A year later, we held in *In re Marriage of Gallo*, 752 P.2d 47, 54 (Colo.1988), that vested and matured military retirement pay that a spouse accrues during a marriage likewise constitutes marital property subject to equitable division in a dissolution proceeding. We subsequently acknowledged that "[t]he crux of both *Grubb* and *Gallo* was that the spouse had a vested right to the benefits ... that were compensation for employment services rendered." *Jones*, 812 P.2d at 1156.

■ ¶ 24 Similarly, our cases establish that whether a spouse's stock options constitute property for purposes of the UDMA turns on whether the spouse has an enforceable right to those options. *Balanson*, 25 P.3d at 39. An enforceable right to stock options exists where the stock option contract indicates that the options were granted in exchange for past or present services. *Id.* (citing *Miller*, 915 P.2d at 1318–19). Where the contract indicates that the options were granted in consideration for future services, a spouse does not have an enforceable right to those options until the future services have been performed. *Id.* at 40 (citing *Miller*, 915

P.2d at 1318). In short, where a spouse has an enforceable right to the options, such a right constitutes a property interest rather than a mere expectancy, whether or not the options are presently exercisable. *Balanson*, 25 P.3d at 39.

¶ 25 Finally, our cases reveal that a spouse's interest in a trust constitutes property for purposes of the UDMA where the spouse has an enforceable right to income or principal from the trust, even if the value of such an interest may be uncertain at the time of the dissolution. For example, in *Balanson*, we held that a spouse's remainder interest in an irrevocable trust constituted "property" under the UDMA because it was a "certain, fixed interest[ ] subject only to the condition of survivorship." *Id.* at 41. Although the value of the spouse's remainder interest in that case was uncertain, that uncertainty did not convert the spouse's interest into a mere expectancy. *Id.* By contrast, we concluded in *Jones* that a spouse's interest in a discretionary trust was a mere expectancy because "the beneficiary of a discretionary trust has no contractual or enforceable right to income or principal from the trust, and cannot force any action by the trustee unless the trustee performs dishonestly or does not act at all." 812 P.2d at 1154–58.

¶ 26 Collectively, our cases reflect that, in determining whether a spouse's interest constitutes property for purposes of the UDMA, we consistently focus on whether the spouse has an enforceable right to receive a benefit.

## C.

¶ 27 Applying the principles from the cases above, we now turn to whether a spouse's accrued vacation and sick leave is property for purposes of the UDMA.

¶ 28 We agree with those courts that conceive of accrued vacation and sick leave as a type of compensation earned for services already performed. *Schober*, 692 P.2d at 268; *Gonzalez*, 214 Cal.Rptr. at 637; *Williams*, 927 P.2d at 683; *see also Black's Law Dictionary* 322 (9th ed. 2009) (defining "compensation" as including vacation, sick pay, and leaves of absence). In the employment law

context, we held in *Hartman v. Freedman*, 197 Colo. 275, 279, 591 P.2d 1318, 1321 (Colo. 1979), that vacation pay owed to an employee under her employment agreement constituted "compensation" for purposes of the Colorado Wage Claim Act.[3] As amended, the Wage Claim Act now expressly defines "wages" or "compensation" to include "[v]acation pay earned in accordance with the terms of any agreement." § 8–4–101(8)(a)(III), C.R.S. (2013). Under section 8–4–101(8)(a)(III), an employer who provides paid vacation for an employee must pay the employee, upon separation from employment, "all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee." *Id.*

¶ 29 Although section 8–4–101(8)(a)(III) of the Wage Claim Act refers only to "vacation" pay, other forms of leave (such as sick leave) may be compensation for services performed where the employee has an enforceable right to receive payment for such leave. In this sense, accrued leave is similar to other forms of "deferred" compensation, such as a pension benefit or stock options granted in exchange for past or present services. An employee who has accrued such leave has already earned an enforceable right to the remuneration, and later receives this compensation when the employee either uses the time for a permissible purpose or is paid the value of the accrued leave. *See Abrell*, 337 Ill.Dec. 940, 923 N.E.2d at 804 (Garman, J. dissenting). Regardless, where an employee has an enforceable right to receive payment for accrued leave under an employment agreement or policy, the employee has a vested interest in that compensation when it is earned. Importantly, this enforceable right is a fixed interest that is not converted to a mere expectancy simply because the employee may elect to receive this compensation in the form of time off instead of a cash payment. In other words, the time off is itself "compensation" that has value. In-

deed, it is because the time off has value that the employee may instead (under the terms of an agreement with the employer) choose to receive this compensation in the form of an additional monetary payment.[4] We conclude that such accrued leave is, in effect, a debt due to the employee as part of the compensation the employee has earned for work already performed. *See id.*, 337 Ill. Dec. 940, 923 N.E.2d at 803. Accordingly, we hold that where a spouse has an enforceable right to be paid for accrued vacation or sick leave, such accrued leave earned by a spouse during the marriage is marital property for purposes of the UDMA.

¶ 30 Whether an employee has an enforceable right to be paid for accrued leave will depend on the terms of any agreement between the employee and the employer. *See Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 716 (Colo.1993) (expressly declining to imply a right to compensation for accrued vacation leave absent an agreement to that effect). Thus, a court should consider the terms of any agreement between the employer and the employee in determining whether an employee has an enforceable right to payment for such leave. *Cf. Balanson*, 25 P.3d at 39 (observing that courts must look to the terms of a stock option contract to determine whether the employee spouse has enforceable right to stock options).

**D.**

¶ 31 Once an interest is determined to be marital property, it must be valued before it can be equitably divided. *See Balanson*, 25 P.3d at 38. In some cases, the value of a spouse's accrued leave at the time of dissolution can be reasonably ascertained by looking to the terms of the employment agreement or policy that establishes the enforceable right. *See, e.g., Dye*, 17 So.3d at 1281 (requiring equitable distribution of hus-

---

3. The statutory provision at issue in *Hartman* required employers who refused to pay compensation due upon termination to pay both the compensation plus a penalty for such refusal. 197 Colo. at 278, 591 P.2d at 1321. A slightly different version of this penalty provision is now codified at section 8–4–109, C.R.S. (2013).

4. Such payment—received in addition to the employee's regular salary or wages—reflects that the accrued leave is not a mere gratuity, but is instead compensation for services performed.

band's accrued unused vacation and sick leave where husband's employment contract provided sufficient guidance on the valuation of such leave that present valuation was not so speculative as to be arbitrary); *see also Schober*, 692 P.2d at 267–68 (concluding that husband's accrued leave was "an economic resource capable of being assigned a value" where husband's collective bargaining agreement permitted up to sixty hours to be converted to cash each year and the remainder to be converted to cash upon termination of employment); *Forrester*, 953 A.2d at 178, 186–88 (affirming division of the monetary value of husband's accrued compensatory time where the accrued time could be converted to cash at any time during his employment). In other cases, the value of such leave can be reasonably ascertained in light of the parties' particular circumstances. For example, the spouse with accrued leave may be eligible for retirement at the time of dissolution (and thus contractually eligible to receive payment for the accrued leave), *see Grund*, 151 Misc.2d 852, 573 N.Y.S.2d 840, 843–44; or the spouse may have already received a cash payout for the accrued leave, *see Overstreet*, 144 S.W.3d at 840; *see also Abrell*, 337 Ill.Dec. 940, 923 N.E.2d at 801 (acknowledging that accrued leave is marital property spouse has converted such leave to cash, the value of which is definite and certain).

¶ 32 We acknowledge that several courts view the value of such leave as speculative and uncertain because a spouse may use the accumulated vacation and sick days and ultimately never receive cash payment for such leave. These courts conclude that accrued leave therefore is not property for purposes of a dissolution proceeding. *See, e.g., Abrell*, 337 Ill.Dec. 940, 923 N.E.2d at 800–01; *Akers*, 729 N.E.2d at 1032–33. Indeed, in this case, the court of appeals reasoned that not only was the value of the accrued leave uncertain, but its very existence was uncertain because Husband might use all of the accrued time. *Cardona*, —— P.3d at ——, 2010 WL 5013737, at *4. Thus, it concluded, "husband's right to be paid for the accrued time is not vested, but rather is uncertain and could disappear completely." *Id.* at ——, 2010 WL 5013737 at *4 (citing *Abrell*, 337

Ill.Dec. 940, 923 N.E.2d at 800). However, this view erroneously assumes that this earned compensation has value only when it takes the form of cash payment, and that it has no value when the employee takes time off from work. Yet the employee receives the compensation—which has value—under either scenario. In other words, when the employee "uses" vacation days, the employee still receives the earned compensation, albeit in the form of time off from work. In short, where the employee has an enforceable right to be paid for such compensation, that right is not rendered speculative or uncertain simply because the compensation ultimately takes the form of time off in lieu of cash.

¶ 33 However, we recognize that in some cases, the value of such leave at the time of dissolution may be so difficult to ascertain as to be speculative. We note that employment agreements and policies can vary substantially. Under some policies, different types of leave may be combined in one comprehensive paid time off ("PTO") plan, whereas other policies split vacation leave, sick leave, and/or personal leave into separate plans. Some employers allow leave to accrue and "roll over" from year to year, while others adopt a "use it or lose it" approach, under which accrued leave is forfeited if the employee does not take time off. Policies may also vary with respect to the timing and the rate at which different types of leave may be cashed out, and depending on the terms of the governing employment agreement or policy, an employer may retain the right to change the terms of compensation for leave that has already accrued. In light of these complexities and the unique nature of accrued leave as a form of compensation, we recognize that it may not always be possible for a court to determine the value of a spouse's accrued leave at the time of dissolution in order to equitably divide that value as part of the marital estate. And yet, the spouse's right to the accrued leave has *some* value, even where a reasonable dollar estimate cannot be attached to it. Thus, where a court cannot reasonably ascertain the value of such leave at the time of dissolu-

tion,[5] the court instead should consider a spouse's right to such accrued leave as an economic circumstance of the parties under section 14–10–113(1)(c).

¶ 34 In sum, we conclude that where a spouse has an enforceable right to be paid for accrued vacation or sick leave, as established by an employment agreement or policy, such accrued leave earned during the marriage is marital property. Where the value of such leave at the time of dissolution can be reasonably ascertained, it is subject to equitable division under the UDMA.[6] Equitable division of a spouse's accrued leave should take into account the needs and circumstances of the parties, including the fact that a spouse may need to "bank" such leave for parenting time. We reiterate that "[a] trial court has great latitude to effect an equitable distribution based upon the facts and circumstances of each case." *Hunt,* 909 P.2d at 537 (citing § 14–10–113(1)). As we have repeatedly observed, "[t]he key to an equitable distribution is fairness, not mathematical precision." *Id.* (citing *Gallo,* 752 P.2d at 55). Finally, where the value of such leave at the time of dissolution cannot be reasonably ascertained, the court should treat the employee spouse's accrued leave as an economic circumstance of the parties.

## IV.

¶ 35 In this case, whether Husband's accrued vacation and sick leave was property subject to equitable distribution turns on whether Husband had an enforceable right to be paid for such time. We conclude that the trial court erred in determining that Husband's accrued leave was marital property because no competent evidence was presented to establish that Husband had any enforceable right to payment for any of his accrued vacation or sick leave. The record indicates that Husband had accrued 451.61 hours of unused leave time as of July 3, 2008, and that this leave time rolled over and continued to accumulate from year to year. However, nothing in the record established that Husband had an enforceable right to receive any sort of cash payout for such time. The court of appeals' opinion states that "Husband testified that he had accrued vacation and sick leave at his employment and that he would be paid for the unused time only if and when he left his job." *Cardona,* — P.3d at ——, 2010 WL 5013737, at *3. However, the hearing transcript reveals that when Husband was asked if he was entitled to payment for his accrued leave upon termination of his employment, Husband actually testified, "According to the law I think that's the way it works yes." Husband's guess as to what the law requires did not establish that he actually had an enforceable right to be paid for his accrued leave. The record contains no evidence of the existence or the terms of any employment agreement or policy on the matter. Accordingly, because nothing in the record establishes that Husband had an enforceable right to be paid for his accrued but unused leave, the trial court erred in considering it marital property sub-

---

5. We have approved the use of delayed methods of distribution in the context of pension benefits to address difficulties in valuing assets that an employee spouse is not yet eligible to receive. *See, e.g., Hunt,* 909 P.2d at 531 (discussing deferred distribution and reserve jurisdiction). Under these methods, "the nonemployee spouse does not receive any benefits until the benefits actually are paid to the employee spouse or the employee spouse becomes eligible to receive benefits." *Id.* However, accrued leave differs from unmatured pension benefits in that an employee spouse is generally entitled to take any leave that has accrued (that is, the employee spouse is presently eligible to receive that compensation in the form of time off), even if the employee spouse is not entitled to convert unused leave to cash until retirement or termination of employment. Moreover, the employee-spouse receives such compensation every time he or she takes an accrued sick or vacation day. Consequently, deferred distribution and reserve jurisdiction are ill-suited methods for distribution of an employee spouse's accrued leave.

6. Although accrued paid leave is a form of compensation for services performed, we note that only such leave accrued *during the marriage* can qualify as marital property subject to equitable division. By contrast, maintenance and child support payments reflect disbursements of a spouse's income that is earned after dissolution. As such, accrued leave that qualifies as marital property subject to equitable distribution should not be considered in determining future maintenance and support awards.

ject to distribution.[7]

## V.

¶ 36 We hold that where a spouse has an enforceable right to be paid for accrued vacation or sick leave, as established by an employment agreement or policy, such accrued leave earned during the marriage is marital property. Where the value of such leave at the time of dissolution can be reasonably ascertained, it is subject to equitable division under the UDMA. However, where the value of such leave at the time of dissolution cannot be reasonably ascertained, the court should consider the employee spouse's right to such leave as an economic circumstance of the parties when equitably dividing the marital estate. In this case, we conclude that the trial court erred in considering the value of Husband's accrued leave as part of the marital estate because no competent evidence was presented to establish that Husband had an enforceable right to payment for such leave. We therefore affirm the court of appeals' judgment on narrower grounds.[8]

JUSTICE BOATRIGHT concurs in the judgment.

JUSTICE BOATRIGHT, concurring in the judgment.

¶ 37 I agree with the majority's conclusion that the accrued vacation and sick leave of the husband in this case could not be equitably divided. I write separately however, because I believe the majority erred in two ways. First, in any case where the court divides a spouse's accrued leave as property and then orders maintenance or child support, the accrued leave is counted twice. Second, the majority minimizes the difficulty of determining the actual value of the leave on the date of distribution. In my opinion,

the actual value of the accrued leave on the date of distribution is indeterminate and speculative and should only be distributed when a present value can be calculated. Hence, I respectfully concur in the judgment only.

## I.

¶ 38 A trial court cannot equitably distribute property if it is counted twice. According to the majority, accrued leave is not a mere gratuity, but is instead compensation earned for services performed. Maj. op. ¶ 29 n.4. In other words, it is income. Even if the majority is correct that accrued leave is a type of compensation for services already performed, the employee spouse does not realize this income until the employee spouse either takes time off or receives payment in lieu of taking the leave. Thus, when a trial court equitably divides accrued leave as property, the court is actually dividing future income.

¶ 39 What the majority fails to consider is that future income is also used to form the basis for child support and maintenance orders. Courts calculate child support and maintenance based on income. § 14–10–115, C.R.S. (2013) (child support guidelines); § 14–10–114, C.R.S. (2013) (maintenance guidelines). And, future income is used to make the actual payments. *See In re Marriage of Huff*, 834 P.2d 244, 257 (Colo.1992). Therefore, under the majority's rationale, because the employee spouse does not receive the income earned from accrued leave until the employee spouse actually uses the leave, accrued leave is counted twice: first as a marital asset subject to equitable distribution at the time of dissolution, and then a second time as income, a percentage of which is paid as child support and/or maintenance.

---

**7.** Nothing in the record before us suggests that the trial court improperly considered the value of Husband's accrued leave in determining the maintenance award.

**8.** The court of appeals remanded this case for further proceedings on the issues of property division, maintenance, and child support. *Cardona*, —— P.3d at ——, 2010 WL 5013717 at * 9. After oral arguments, we entered an order retaining jurisdiction only on the issue of whether

accrued vacation and sick leave is marital property and we returned the case to the court of appeals with directions to remand the case to the district court with respect to all remaining issues. Thus, because the district court has already reconsidered property division, maintenance, and child support without considering husband's accrued vacation and sick leave, there is no need to remand this case for further proceedings.

¶ 40 Here, while the majority did not find that the accrued leave was subject to equitable distribution, this case illustrates the potential inequity of the majority's holding that an enforceable right to accrued leave can be a marital asset even in cases where child support and maintenance is ordered. At the time of the permanent orders, the trial court valued the husband's accrued leave at $23,232. The wife supplied that value to the court by multiplying the husband's accrued hours (both vacation and sick leave, totaling forty-five hours) by his hourly wage. The trial court then ordered the husband to pay one-half of that value, $11,616, to the wife. In addition, the trial court ordered the husband to pay child support and maintenance. So, the husband had to pay the wife half of the calculated value of his accrued leave and then pay child support and maintenance based on the income he earned when he used that same leave. This double counting of assets is inequitable. In my view, when child support or maintenance is ordered, accrued leave should only be treated as income when it is realized.

## II.

¶ 41 Second, the majority's holding minimizes the requirement that a marital asset have a determinable present value. Simply put, a trial court cannot equitably distribute an asset that will not be realized until some date in the future if its present value cannot be accurately determined. Except in very rare circumstances,[1] the present value of accrued leave is too speculative for a court to make an equitable division.

¶ 42 As the majority acknowledged, property must be valued before courts can equitably divide it. Maj. op. ¶ 31; *In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo.2001); *In re Marriage of Jorgenson*, 143 P.3d 1169, 1172 (Colo.App.2006). While I disagree with their theory of valuation, I agree with the majority that the property should be valued as of the date of the decree. Maj. op. ¶ 12; *Balanson*, 25 P.3d at 36. The majority, however, fails to treat accrued leave as we have treated other property that will also not be received until a future date, such as pensions. We have previously held that if the employee spouse will not receive the property until a future date, courts must calculate the present value of the property in order to make an equitable distribution. *In re Marriage of Hunt*, 909 P.2d 525, 531 (Colo.1995). When a trial court cannot "reasonabl[y] estimate" the present value of the asset, it cannot presently distribute it. *See In re Marriage of Gavito*, 794 P.2d 1377, 1379 (Colo.App.1990) ("[U]nless a trial court can make a reasonable estimate of the present value of [an asset], it has no basis for making a present distribution of that asset.").

¶ 43 Unlike calculating the present value of a pension, it will be nearly impossible for a court to determine the present value of accrued leave. In order to determine the present value of accrued leave, a court must consider a bevy of speculative and indeterminate factors such as future illness, vacations, company policy, lifestyle changes, job changes, family needs, and retirement. The majority acknowledges that several jurisdictions share my concern and have thus found that the present value of accrued leave is indeterminate and speculative. *See* Maj. op. ¶ 17 (citing *Akers v. Akers*, 729 N.E.2d 1029, 1032 (Ind.Ct.App.2000) ("[I]t was mere speculation for the trial court to assume that [the employee spouse] would not suffer any illness and would retain at least 187 unused sick days at their current value until retirement."); *Preiss v. Preiss*, 238 Wis.2d 368, 374, 617 N.W.2d 514, 517 (Wis.Ct.App. 2000); *Bratcher v. Bratcher*, 26 S.W.3d 797, 800 (Ky.Ct.App.2000); *Thomasian v. Thomasian*, 79 Md.App. 188, 200, 556 A.2d 675, 681 (1989) ("[Accrued vacation or holiday time] may be, and often is, dissipated when the person entitled to do so, takes vacation or holiday time. Thus, it is far from as tangible as, and much more difficult to value, not to mention more personal than, a pension or retirement benefits.")). But, the majority minimizes this critical problem of valuation and directs courts to look at the terms of the

---

1. For example, if a spouse, whose accrued leave is vested and payable at retirement, is on the cusp of retirement, the present value can likely be calculated because nearly all of the future contingencies have been removed.

employment agreement or policy that establishes the enforceable right to determine a value. *Id.* ¶ 31. Yet the record before us does not support the majority's assumption that a trial court can in fact make such a determination, even when it has definitive information about the leave policy.

¶ 44 Even if the trial court had evidence of the terms of the leave policy of the husband's employer, the facts of this case present a perfect example of the difficulties of valuing accrued leave. As previously noted, at the time of the permanent orders, the court valued the husband's accrued leave at $23,232. The trial court ordered the husband to pay one-half of this "value" of the accrued leave, $11,616, to the wife. In so doing, the trial court in effect assumed that the husband would never use his accrued leave as time off. Yet, the exact opposite occurred. The trial court allowed the wife to relocate to Florida with the children. Because the wife and his children relocated, the husband used his leave to visit his children. By the time this Court heard oral arguments, the husband had used all of his accrued leave. As a result, the actual present value of the husband's accrued leave on the date of distribution in this case was zero.

### III.

¶ 45 The facts of this case demonstrate the inequities of double counting accrued leave as both income and property and the difficulties of calculating the present value of the accrued leave. To avoid inequitable results, if a trial court orders child support or maintenance, it should treat accrued leave only as income. On the other hand, if the trial court does not order child support or maintenance, it should consider accrued leave only as an economic circumstance when it divides marital property. Hence, I concur in the judgment only.