**H & H DISTRIBUTORS, INC., d/b/a Dunn Shoe & Leather Co., Plaintiff–Appellee,**

v.

**BBC INTERNATIONAL, INC., Defendant–Appellant.**

**No. 88CA0768.**

Colorado Court of Appeals, Div. III.

Oct. 11, 1990.

Rehearing Denied Nov. 15, 1990.

Yu, Stromberg & Huotari, P.C., Frederick Y. Yu, Denver, for plaintiff-appellee.

Cantrick & Rees, P.C., David K. Rees, Denver, Pryor, Cashman, Sherman & Flynn, Phillip R. Hoffman, New York City, for defendant-appellant.

Opinion by Judge MARQUEZ.

Defendant, BBC International, Inc., appeals a judgment entered on a jury verdict in favor of plaintiff, H & H Distributors, d/b/a Dunn Shoe & Leather Co., Inc., for fraud and breach of contract. We affirm in part, reverse in part, and remand for further proceedings.

In the spring of 1983, representatives of BBC and S.B. Sports, Ltd., a corporation established by BBC, approached plaintiff, a wholesale distributor of footwear in the Rocky Mountain region, and sought plaintiff's participation in the sale and distribution of a certain brand of athletic shoes. In the summer of 1983, plaintiff placed its first order for the branded athletic shoes from Sports. Plaintiff received and marketed these shoes.

In December 1983, plaintiff and Sports also entered into a distributorship agreement which was later placed in written form and which covered the State of California. That agreement, however, was ultimately dropped by mutual agreement. Also, in approximately December 1983, plaintiff began to sell defendants' brand of athletic shoes exclusively.

Plaintiff presented evidence that, subsequently, BBC failed to inform plaintiff that the foreign licensor was not following through on its promises to have promotional campaigns in the United States. BBC also failed to disclose to plaintiff that it had stopped placing any more trade advertisements after May 1984, that it was having problems with its four other distributors, or that the brand was adversely affected by litigation with another company. In fact, the record reflects that BBC made affirmative representations in the summer of 1984 assuring plaintiff that the program was viable.

In September 1984, plaintiff placed an order with Sports for 14,440 pairs of shoes, which Sports' director of sales accepted. Sports, however, failed to fill this order.

When the shoe program ultimately fell through, plaintiff sued BBC and Sports alleging damages from the failure to fill the September purchase order, breach of the contract to provide a branded athletic shoe program, promissory estoppel, and fraud. Plaintiff alleged as a result of BBC and Sports' conduct that, among other things, plaintiff lost its business. In its complaint, plaintiff sought relief against the defendants for precisely the same amount of actual damages on its claims for fraud, breach of contract for failure to provide a branded athletic shoe program, and for promissory estoppel. Sports counterclaimed for breach of contract to pay for shoes ordered and received and for account stated.

The jury returned a special verdict finding that both BBC and Sports had failed to deliver the shoes ordered by plaintiff in September 1984, and awarded damages of $65,703, but only against BBC. The jury also found that both defendants had breached an express contract to provide plaintiff with a branded athletic shoe program, but stated that the damages were "none." While the jury found that the allegations of promissory estoppel had been sustained as to both, it awarded $1.00 as damages against BBC only. It further determined that both defendants had defrauded plaintiff, but awarded $1,353,694.30 in damages against BBC alone. As for the damages against Sports on the promissory estoppel and fraud claims, the jury left the spaces on the special verdict form blank.

On the counterclaim, the jury found that plaintiff failed to pay for shoes ordered and received and awarded Sports $75,959.30 in damages. Plaintiff's cross-appeal of this issue was subsequently withdrawn.

### I.

BBC first asserts that the award for fraud should be reversed since plaintiff's claim against BBC sounds in contract, not in tort. We disagree.

■ A claim for the tort of fraud cannot be predicated upon the mere nonperformance of a promise or contractual obligation or upon the failure to fulfill an agreement to do something at a future time. *State Bank of Wiley v. States,* 723 P.2d 159 (Colo.App.1986). However, a promise concerning a future act, when coupled with a present intention not to fulfill that promise, can be actionable fraud. *Kinsey v. Preeson,* 746 P.2d 542 (Colo.1987); *Stalos v. Booras,* 34 Colo.App. 252, 528 P.2d 254 (1974).

Here, the jury was instructed that conduct for fraud must be separate from the contract claim:

> "Plaintiff's fraud claim cannot be based upon the mere nonperformance by defendants of a promise or of a contractual obligation. Nor can plaintiff's fraud claim be based upon defendants' failure to fulfill an agreement to do some act at a future time."

The elements of fraudulent concealment are:

> "1) concealment of a material existing fact that in equity and good conscience should be disclosed; 2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; 3) ignorance of that fact on the part of the one from whom the fact is concealed; 4) the intention that the concealment be acted upon; and 5) action on the concealment resulting in damages."

*Eckley v. Colorado Real Estate Commission,* 752 P.2d 68 (Colo.1988); *Ackmann v. Merchants Mortgage & Trust Corp.,* 645 P.2d 7 (Colo.1982). *See also CJI–Civ.* 3d 19:2 (1989). The instructions given to the jury here were in accord with this definition. The jury was also provided instructions pertaining to false representations.

■ Here, plaintiff does not claim that there was fraud in the inducement in 1983 or any other misconduct in that year, but rather bases its claim on defendants' conduct in 1984. Plaintiff presented evidence that, in 1984, BBC failed to inform plaintiff that the foreign licensor was not following through on its promises to have promotional campaigns in the United States; that it failed to disclose that it had decided not to run any more trade advertisements after May 1984; that it was having problems with four other distributors; that the brand was adversely affected by litigation with another company; and that Sports had agreed by July 1984, as a part of settlement, to discontinue use of the logo and to terminate further sales of shoes bearing the original logo by the end of October 1984. There was also evidence not disclosed to plaintiff that Sports had last paid its employees in the spring of 1984. Yet, in the summer of 1984 BBC continued to make affirmative representations that the program was still viable.

We conclude that in equity and good conscience BBC had a duty, apart from the contract, to disclose these items. *See Xerox Corp. v. ISC Corp.,* 632 P.2d 618 (Colo. App.1981).

■ Evidence was presented that BBC knew that plaintiff was attempting to market defendants' brand of athletic shoes and that plaintiff had to begin presales of the shoes in 1984 in order to be prepared for the 1985 season. Thus, the record supports findings that BBC not only actually knew of material facts that were not disclosed, but that it intended that plaintiff proceed with its presales efforts in 1984. The record also reflects that BBC had ample opportunity to disclose and could have disclosed the withheld information with minimal effort. *See Iverson v. Solsbery,* 641 P.2d 314 (Colo.1982). Thus, the jury could find that BBC's failure to do so and its statements that the program was still viable constituted false representation and concealment for purposes of fraud. *See*

*Eckley v. Colorado Real Estate Commission, supra; Schnell v. Gustafson,* 638 P.2d 850 (Colo.App.1981).

■ Further, the evidence was sufficient to prove that the fraudulent conduct caused plaintiff's damages. According to the testimony of plaintiff's witnesses, plaintiff, in reliance on BBC's fraudulent conduct, continued its efforts to presell the defendants' product in preparation for the 1985 season until it learned, in October 1984, that the program was dead. These actions were detrimental to plaintiff since, as the jury found, they resulted in substantial economic loss.

We conclude, therefore, that the jury could properly have found that BBC's non-disclosures, concealments, and misrepresentations were separate and apart from its obligations under the contract.

## II.

BBC also contends that the jury's special verdict is replete with inconsistencies. We conclude that the verdict, with the exception of the jury's determination on the first contract claim, is consistent.

■ Jury verdicts will not be reversed for inconsistency if the record reveals any basis to support them. *Alzado v. Blinder, Robinson & Co.,* 752 P.2d 544 (Colo.1988); *Fletcher v. Porter,* 754 P.2d 788 (Colo.App. 1988).

Our task is to examine carefully the instructions, the verdict forms, and the evidence, and to determine from the record whether there is competent evidence from which the jury logically could have reached its verdicts and to attempt to reconcile the jury's answers to special verdicts, if possible. Also, if there is a view of the case that makes the jury's answers consistent, they must be resolved that way. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo. 1981); *Fletcher, supra.* Applying these principles, we conclude that the jury's verdict, except for the first contract claim, is consistent.

## A.

We accept BBC's argument that the verdict is inconsistent as to the first contract claim because the jury awarded $65,703 damages against BBC only for Sports' failure to fill plaintiff's September 1984 purchase order.

[6, 7] Since the purchase order in question was wholly between plaintiff and Sports, in order to find BBC liable, the jury had to find that Sports was an alter ego of BBC. As such, BBC would be liable to plaintiff for Sports' breach of the purchase contract. *See New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing Corp.,* 645 P.2d 868 (Colo.App.1982). Further, BBC's liability for Sports' breach of that contract could only be for the same amount as Sports' liability. Here, the jury awarded damages against BBC but not Sports.

In a similar situation in *Wulff v. Christmas,* 660 P.2d 18 (Colo.App.1982), we found a verdict to be inconsistent in that damages had been awarded against an individual but only nominal damages against a corporation "despite the instructions that [the individual] could be responsible only for damages caused by the defendant corporation." Hence, the verdicts were inconsistent, and we remanded for a new trial on the issues of liability and damages.

Here, as in *Wulff,* the jury was instructed that in order to hold BBC liable for Sports' actions, it had to find such a close relationship between the two corporations that one was the instrumentality of the other. Thus, to find that both Sports and BBC were liable for failing to deliver the shoes to plaintiff, but to award $65,703 against only BBC, is wholly inconsistent. *See Wulff, supra.* Therefore, as to this claim, the jury's verdict cannot stand, and the cause must be remanded for a new trial on the issues of liability and damages.

Since we are remanding on the issue of damages for breach of the purchase order, we do not address BBC's argument that the award of $65,703 was for plaintiff's gross profit, rather than its net profit.

### B.

■ Although the jury found both BBC and Sports liable for breach of the distributorship contract as a result of BBC's failure to provide the branded shoe program, the jury verdict form relating to damages for this claim was returned stating "none" and did not even provide an award of nominal damages as to either defendant. At the same time, the jury awarded plaintiff, as a consequence of being defrauded by both defendants, $1,353,694.30, and this award was only against BBC.

In our view, the two theories of recovery are separate and distinct, and the jury was so instructed. It could have found that the fraud consisted of BBC's conduct separate from the contract and not of its failure to provide the branded athletic shoe program, and that there were no damages for the 1983 breach of contract while there were damages for the 1984 fraud.

Plaintiff was entitled to the damages proximately caused by BBC's misrepresentations and non-disclosures even though the jury found no damages from not fulfilling its prior contractual obligations. Thus, we are able to reconcile the jury's verdict of more than $1.3 million for fraud with its failure to award anything for breach of contract.

### C.

■ We are also able to reconcile the fact that the jury found that both BBC and Sports defrauded plaintiff, but that damages flowed only from BBC's fraud.

The jury was instructed on the alter ego issue. However, the jury instructions do not state that BBC is to be found liable only if Sports is liable, but discuss imposing liability on "defendants" and further provide that BBC can be held liable for *Sports'* actions only if it is determined to be Sports' alter ego. Thus, the jury could have found that BBC acted fraudulently in its own right, causing damages, while Sports' fraudulent activities did not cause any damage.

### D.

■ For the same reasons, the promissory estoppel verdict is not inconsistent even though the jury found both Sports and BBC liable but awarded only $1 nominal damages against BBC. The jury could have determined that only BBC's conduct resulted in damages.

■ In addition, the promissory estoppel damage determination is not inconsistent with the fraud verdict because the jury may have based liability on conduct that was separate from the damaging fraudulent activity.

### III.

We find no error in the court's refusal to admit a certain letter into evidence.

Prior to trial, plaintiff moved, *in limine*, to exclude a letter its counsel had written to BBC, claiming the letter was an offer of compromise and excludable under CRE 408. The trial court agreed and excluded the letter under CRE 408, but allowed the parties to testify as to the particular facts contained in the letter.

■ Whether the statements contained in the letter were actually made in the course of a "settlement negotiation" or "compromise" is a question of fact, and since there is evidentiary support for the trial court's finding that the letter was part of an effort to compromise plaintiff's claims, that finding is binding on appeal. *See Aaron v. Marcove*, 685 P.2d 268 (Colo. App.1984).

■ Even if this letter constitutes an "admission of fact," as BBC alleges, plaintiff's "admission" would be excludable under CRE 408 because it was made in a letter offering to settle the dispute. *See Aaron v. Marcove, supra.*

The judgment is affirmed on all claims except as to the first contract claim regarding the September 1984 purchase order. That portion of the judgment on the first contract claim is reversed, and the cause is remanded for a new trial on the issues of

liability and damages regarding that claim in accordance with this opinion.

STERNBERG, C.J., and PLANK, J., concur.