The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 20, 2018

## 2018COA141

**No. 17CA0991 Herrera v. Lerma — Torts — Personal Injury; Evidence — Relevancy and Its Limits — Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time**

A division of the court of appeals concludes that plaintiff's evidence of her permanent whole person impairment rating percentage was relevant in a non-workers' compensation personal injury case. Thus, the division reverses the trial court's judgment and remands the case for a new trial.

Court of Appeals No. 17CA0991
Mesa County District Court No. 15CV30729
Honorable Lance P. Timbreza, Judge

Maria Herrera,

Plaintiff-Appellant,

v.

Leo Lerma,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HAWTHORNE
Berger and Miller*, JJ., concur

Announced September 20, 2018

Killian Davis Richter & Mayle, PC, J. Keith Killian, Damon J. Davis, Benjamin
P. Meade, Grand Junction, Colorado, for Plaintiff-Appellant

Senter Goldfarb & Rice, LLC, Arthur J. Kutzer, Sarah M. Andrzejczak, Denver,
Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Plaintiff, Maria Herrera, appeals the judgment entered on the jury's verdict awarding her damages of $1980.81 on her negligence claim against defendant, Leo Lerma. We reverse and remand.

*I.    Facts and Procedural Background*

¶ 2    In November 2012, defendant's truck hit plaintiff's car from behind as she slowed for traffic. A week later, plaintiff sought healthcare at a hospital where she complained of numbness in her legs and arms as well as neck pain. The doctor diagnosed her with neck strain.

¶ 3    In June 2013, plaintiff was involved in a second car accident. She had stopped at a traffic light and her sandal had become stuck beneath the brake pedal. As she tried to free it, she accidentally pushed the accelerator, causing her to hit the trailer hitch of the truck in front of her. Plaintiff testified that the second accident did not injure her.

¶ 4    A year later, starting in June 2014, plaintiff sought additional medical treatment for her neck and lower back. She then sued defendant for negligence, claiming total damages of $38,356.46. The jury awarded her $1980.81 in economic damages but $0 on her claims of physical impairment and noneconomic damages.

## II. Instructional Error

¶ 5    Plaintiff contends that the trial court erred by instructing the jury to consider whether the second accident in June 2013 "increased, aggravated, or worsened any injuries, damages, or losses caused by the" first accident because defendant hadn't presented any evidence supporting such an instruction.  We agree.

### A. Standard of Review

¶ 6    We review a trial court's decision to give a particular jury instruction for an abuse of discretion.  *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011); *Vititoe v. Rocky Mountain Pavement Maint., Inc.*, 2015 COA 82, ¶ 67.  A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair, or the instruction is unsupported by competent evidence in the record.  *Day*, 255 P.3d at 1067; *Vititoe*, ¶ 67.

¶ 7    "We review a properly preserved objection to a jury instruction for harmless error."  *Waneka v. Clyncke*, 134 P.3d 492, 494 (Colo. App. 2005), *aff'd on other grounds and remanded*, 157 P.3d 1072 (Colo. 2007).  Such an error is harmless unless it affects the parties' substantial rights.  C.R.C.P. 61.  "The court must order a new trial when the result of the trial may have been different if the court had

2

given the proper instruction." *Clyncke*, 157 P.3d. at 1079; *Webb v. Dessert Seed Co.*, 718 P.2d 1057, 1066-67 (Colo. 1986) (requiring a new trial when the result would probably have been different if the court had given the proper instruction); *Mendez v. Pavich*, 159 Colo. 409, 411-12, 412 P.2d 223, 224 (1966) (requiring retrial when an instruction is so erroneous that it would probably lead the jury into error).

## B.     Analysis

¶ 8      Using an instruction consistent with CJI-Civ. 6:9 (2009), the trial court instructed the jury as follows:

> The plaintiff . . . claims damages from the defendant . . . for injuries, damages, or losses caused by an auto accident on November 13, 2012.  If you find that the defendant's negligence or negligence *per se*, if any, was a cause of any such injuries, damages, or losses, then the plaintiff may recover all damages caused by that event.  But if you find that plaintiff was later injured in an auto accident on June 6, 2013[,] which was not caused by any acts or omissions of the defendant, then the plaintiff may not recover any damages caused only by the second auto accident.
>
> If you find the auto accident on June 6, 2013, increased, aggravated, or worsened any injuries, damages, or losses caused by the auto accident on November 13, 2012, then you must separate, if possible, those damages

caused by the first auto accident from those caused by the second auto accident, and the plaintiff may recover all those separate damages caused by the first auto accident.

If it is not possible to separate any damages caused by the auto accident on November 13, 2012[,] from any caused by the auto accident on June 6, 2013, then the plaintiff may recover those damages only from the date of the first auto accident to the date of the second auto accident.

Such an instruction is proper when sufficient evidence shows that a later event or incident either

(1) causes a new, unrelated injury to the plaintiff or

(2) aggravates the injury the plaintiff suffered as a result of the defendant's tortious conduct.

*Lascano v. Vowell*, 940 P.2d 977, 982 (Colo. App. 1996); *see also Francis ex rel. Goodridge v. Dahl*, 107 P.3d 1171, 1175 (Colo. App. 2005) ("Because the evidence was sufficient to support the subsequent injury instruction and adequately formed a question of fact for the jury to decide, we perceive no error by the court in instructing the jury on subsequent injury."); *Guerreo v. Bailey*, 658 P.2d 278, 279-80 (Colo. App. 1982) ("Since the defendant introduced evidence that [plaintiff's layoff] aggravated the emotional injuries caused by the collision . . . the instruction was

4

warranted."). Sufficient evidence must exist to justify giving this instruction because, without such evidence, "[i]t would be mere conjecture" to presume that the later event caused or aggravated an existing injury. *Brooks v. Reiser*, 483 P.2d 389, 391 (Colo. App. 1971) (not published pursuant to C.A.R. 35(f)).

¶ 9    Such conjecture occurred here. Neither party presented evidence that plaintiff suffered any injury or aggravation of an existing injury because of the second accident. Defendant failed to present his own medical expert and his counsel failed to question plaintiff's medical expert about whether the second accident could've contributed to a later need for medical attention. *Cf. Francis ex rel. Goodridge*, 107 P.3d at 1175 ("[T]he record reflects some evidence of a later injury suffered by plaintiff" where "experts testified for both parties and expressed conflicting opinions on whether plaintiff's fall from the pommel horse increased her injuries caused by the accident with defendant."). Thus, the evidence at trial was insufficient to justify instructing the jury about the second accident. So we conclude that the trial court abused its discretion in giving such an instruction.

¶ 10     We also conclude that this error harmed plaintiff.  Defendant's main defense at trial was that plaintiff's injuries were caused by the second accident.  His counsel cross-examined plaintiff extensively about the second accident.  He also focused on it during closing arguments.  And most of all, the instruction gave the jury an unsubstantiated reason for denying plaintiff's claim for her medical bills sustained after the second accident, which it arguably did by awarding plaintiff only $1980.81 — a far cry from her requested $38,356.46, mostly for medical bills accumulated, or expected to accumulate, *after* the second accident.

¶ 11     We therefore conclude that had it not been for the trial court's improper instruction, the jury may have reached a different verdict.  So we reverse the court's judgment and remand this case to the trial court for a new trial.

¶ 12     Because the following two issues will likely arise on remand in the event of retrial, we address them now.

### III.    Impairment Rating

¶ 13     Plaintiff contends that the trial court erred by excluding her expert's testimony about her 15% permanent whole body impairment rating.  We agree.

## A. Standard of Review

¶ 14    Trial courts "have broad discretion to admit or to exclude expert testimony." *Sovde v. Scott*, 2017 COA 90, ¶ 24. A "trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or if it applies an incorrect legal standard." *Id.*

## B. Analysis

¶ 15    Using the American Medical Association Guides to the Evaluation of Impairment (AMA Guides), plaintiff's expert evaluated plaintiff as having a permanent whole person impairment rating of 15%. The AMA Guides is a publication used by physicians to calculate the nature and extent of a medical impairment. *See Walker v. Jime Fuoco Motor Co.*, 942 P.2d 1390, 1392 (Colo. App. 1997). The revised third edition is required by statute to be used in workers' compensation cases to determine an employee's medical impairment rating. *See* § 8-42-107(8)(b.5)(I)(A), (b.5)(II), C.R.S. 2017. But, no Colorado statute or case law limits the use of the AMA Guides to workers' compensation cases only.

¶ 16    Before trial, defendant asked the court to exclude testimony about plaintiff's 15% permanent impairment rating as calculated by

her medical expert using the AMA Guides' fifth edition.  The court

excluded the testimony because it determined that the impairment

rating was irrelevant under CRE 401 and prejudicial under CRE

403.  But it allowed plaintiff's medical expert to testify that plaintiff

had suffered permanent impairment according to the AMA Guides,

just not as to the actual percentage rating of that impairment.

### 1.    *Relevancy*

¶ 17     In granting defendant's motion in limine, the court determined

that plaintiff's permanent impairment was relevant to her case —

but that the percentage rating of that impairment (15%) was not.

But it provided no persuasive reason.

¶ 18     Defendant argues that the impairment rating was irrelevant

because "this case was not a claim for workers' compensation

benefits."  It's true that this isn't a workers' compensation case.

But, that doesn't mean the impairment rating determined by using

the AMA Guides was irrelevant in this case.  Simply because the

workers' compensation statute requires using the AMA Guides in

determining a workers' compensation claimant's medical

impairment rating doesn't mean it necessarily excludes using an

impairment rating in other types of personal injury claims.  *See*

*Music v. Hebb*, 744 So. 2d 1169, 1171 (Fla. Dist. Ct. App. 1999) ("Although impairment rating evidence is specifically permitted in workers' compensation actions, its inclusion there does not preclude such evidence in this personal injury action. . . . Rather, we hold the admissibility of an impairment rating is governed by the general rules of evidence.") (citations omitted); *Estate of Carter v. Szymczak*, 951 N.E.2d 1, 6 (Ind. Ct. App. 2011) ("Although it is clear that [impairment rating] evidence is specifically permitted in workers' compensation claims, its inclusion within a worker's compensation statutory scheme does not preclude such evidence in a personal injury action." (citing *Music*, 744 So. 2d at 1171)).

¶ 19    To the contrary, the expert's testimony as to plaintiff's impairment rating was relevant here. Most importantly, it would've helped make the existence of plaintiff's claim of permanent medical impairment more probable by showing that a physician using objective AMA guidelines had concluded not only that plaintiff was permanently impaired, but that the impairment could be quantified into a scientifically determined percentage. And such testimony would've also given the jury a concrete percentage on which it could base its verdict. *See Estate of Carter*, 951 N.E.2d at 6 ("The

[impairment] rating evidence aided the jury in determining whether and to what extent [the plaintiff] was permanently injured. The challenged evidence is therefore relevant. Moreover, [the defendant] has not shown that its probative value is substantially outweighed by the danger of unfair prejudice."); *see also Tabieros v. Clark Equip. Co.*, 944 P.2d 1279, 1333 (Haw. 1997) ("The extent to which [the plaintiff] was permanently disabled or impaired by the accident was obviously relevant to his compensatory damage claim. . . . Our review of the record convinces us that the jury could not have been confused or [the defendant] unfairly prejudiced concerning the significance, with respect to [the plaintiff's] 'pain and suffering,' of the impairment ratings following . . . cross-examination. We are likewise convinced that [the doctor's] expert testimony was of the sort that 'would probably aid the trier of fact in arriving at the truth.'") (citation omitted).

¶ 20    Because we can't discern any reason why plaintiff's permanent impairment rating determined by her expert witness using the AMA Guides would be irrelevant — and we can perceive reasons why it would be relevant — we could conclude that the trial court abused

its discretion when it excluded the expert witness's testimony from the trial. But first we take up the court's CRE 403 concerns.

## 2. *Rule 403*

¶ 21 The trial court concluded that the impairment rating's "minimum probative value" was "substantially outweighed by the danger of unfair prejudice and ha[d] the risk of being confusing or misleading to the jury" because it would require evidence

(1) "concerning [the impairment rating's] purpose";

(2) showing "how [the impairment rating] is determined"; and

(3) determining "what [the impairment rating] means and which version of the Guides [is] appropriate given [that] the [workers' compensation] statute requires one set . . . and [plaintiff's medical expert] appeared to use another, not the most recent."

The court also reasoned that (4) the "impairment rating's statutory application is [sic] to worker's compensation cases for the purpose of arriving at a statutorily predetermined sum of money to compensate for disability in lieu of wages."

¶ 22 We aren't persuaded by the court's reasoning. First of all, plaintiff's medical expert testified at length about the

- purpose of the AMA Guides,

- determination of the ratings, and

- version of the AMA Guides she used as compared to the version required by the workers' compensation statute.

¶ 23    Second, for reasons already stated, the workers' compensation statute's use of the AMA Guides to determine a medical impairment rating in workers' compensation claims has no bearing on its use in other personal injury claims.

¶ 24    And third, testimony laying the foundation for the scientific basis behind a medical expert's opinion isn't necessarily confusing or misleading to the jury. *See Tabieros*, 944 P.2d at 1333. If anything, it clarifies the context behind the 15% impairment rating. Yes, it could be argued that the "more meaningful testimony," as the court reasoned, would be about the physical impairment itself because it "better places the jury in a position to determine the extent of any damages." But that doesn't mean the 15% impairment rating is irrelevant. If anything, it complements and corroborates plaintiff's testimony. And it gives the jury another perspective to consider, which arguably places the jury in an even better position to determine plaintiff's damages.

¶ 25    For these reasons, we conclude that the trial court abused its discretion when it excluded plaintiff's expert's testimony about plaintiff's 15% impairment rating.

*IV.    Insurance Question During Voir Dire*

¶ 26    Plaintiff contends that the trial court erred by preventing her counsel from asking prospective jurors during voir dire whether they had an interest in defendant's insurance carrier.  We agree.  As mentioned earlier, we address this issue because it is likely to arise on remand in the event of retrial.  But we don't address defendant's preservation arguments because we doubt that this issue will arise in the same manner as it did in the original proceedings.

*A.    Standard of Review*

¶ 27    We review a trial court's decision to limit voir dire for an abuse of discretion.  *People v. Collins*, 730 P.2d 293, 300 (Colo. 1986) ("The propriety of questions to potential jurors on voir dire is within the discretion of the trial court, and its ruling thereon will not be disturbed on appeal unless an abuse of that discretion is shown.").

*B.    Analysis*

¶ 28    Before trial, plaintiff sought permission from the court to ask prospective jurors during voir dire, "[A]re any of you now or have

13

any of you been an agent, stockholder, or employee of Young America Insurance Company in this case or an underwriting company of Young America or do any of you have any other interest in a subsidiary company of Young America?" (the insurance question). Defendant objected because "this case is fraught with danger to provide some kind of indication to the [j]ury that liability insurance is available." The court ruled that plaintiff could ask the broad insurance question as plaintiff had phrased it, but without mentioning defendant's specific insurance carrier, because "then we're finding out information that may lead to, arguably, reasons to not have a [j]uror be part of the panel." It also said that, "if the [j]uror answers in the affirmative, we can address what may be appropriate from there."

¶ 29    This issue presents essentially the same circumstances reviewed by our supreme court in *Smith v. District Court*, 907 P.2d 611 (Colo. 1995). There, the court framed the insurance question as "whether prospective jurors are officers, directors, or policyholders of the defendant's insurance carrier." *Id.* at 612. The court also noted that "[i]t is well established in Colorado that the insurance question . . . may be asked by counsel during voir dire of

14

prospective jurors." *Id.* And the court then held that, "[a]ccording to our precedent, counsel may ask the insurance question during voir dire in order to determine the prejudices and biases of prospective jurors. We therefore hold that the trial court erroneously prohibited plaintiff's counsel from asking whether prospective jurors are officers, directors, or policyholders of [defendant's insurance carrier] during voir dire." *Id.* at 613.

¶ 30     Still, defendant argues that in a "modern personal injury lawsuit, jurors know, or at least can presume, that insurance is somehow involved . . . [and] [t]here is no purpose for plaintiffs to present the insurance question to the jury, as it only indicates that insurance is an issue in the case." He also asserts that the trial court's ruling that plaintiff could ask the broad insurance question was a reasonable option for the trial court to follow. But we are "bound to follow supreme court precedent." *In re Estate of Ramstetter*, 2016 COA 81, ¶ 40 (quoting *People v. Gladney*, 250 P.3d 762, 768 n.3 (Colo. App. 2010)). And here, we are bound by the supreme court's explicit holding that counsel is entitled to ask the insurance question during voir dire to determine the biases and prejudices of prospective jurors.

¶ 31    So, the trial court abused its discretion by not allowing plaintiff to ask the insurance question during voir dire.

### V.    Conclusion

¶ 32    We reverse the trial court's judgment and remand the case to the trial court for a new trial.

JUDGE BERGER and JUDGE MILLER concur.