24CA1600 Reif v Priebe 09-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1600
Douglas County District Court No. 21CV30871
Honorable Jeffrey K. Holmes, Judge
Honorable Gary M. Kramer, Judge

---

Carl J. Reif,

Plaintiff-Appellant,

v.

Paul Priebe,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Tow and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

---

Bell & Pollock, P.C., Bradley P. Pollock, Dana N. Miller, Denver, Colorado, for Plaintiff-Appellant

Patterson Ripplinger, P.C., Kevin G. Ripplinger, Greenwood Village, Colorado, for Defendant-Appellee

¶ 1    In this car accident case, plaintiff, Carl J. Reif, appeals the judgment entered in favor of defendant, Paul Priebe.  Reif contends that (1) the district court erred by bifurcating the trial as to liability and damages; (2) the court erred by instructing the jury to consider a series of collisions as a single accident; and (3) the jury returned an irreconcilably inconsistent verdict.  We affirm the judgment.

## I.    Background

¶ 2    In December 2018, Reif, Priebe, and a third driver, Heather Morales, were involved in a car accident on a highway exit ramp. Before the accident, the three cars were traveling with Morales in front, Reif behind her, and Priebe behind him.  According to Reif, Priebe's vehicle "crashed into the rear end of [Reif's] vehicle," and "[t]he momentum of the crash . . . caused [Reif's] vehicle to [crash] into the rear end of . . . Morales's vehicle."  Priebe admitted that he was negligent for rear-ending Reif, but he asserted that, "at the time of this impact, [Reif] had already struck [Morales's] vehicle ahead of him."

¶ 3    Reif sued Priebe for negligence and negligence per se, and Priebe asserted a comparative negligence defense, arguing that Reif's injuries and damages were the result of Reif's own negligence,

1

which equaled or exceeded Priebe's.  Priebe then moved to bifurcate the trial as to liability and damages, arguing that "[a] resolution of the issue of fault/liability under the requested bifurcation could ultimately serve to be dispositive of the entire case, since a finding of fault as against . . . Reif which meets or exceeds 50% would render any damages determination moot under Colorado's comparative fault standards."  Reif objected to bifurcation, arguing, without elaboration, that the issue of "liability/fault [could not] be separated from the damages claim" because "the mechanism of injury [was] integral" to expert testimony about "how the collision(s) occurred."  The district court granted Priebe's motion to bifurcate the trial.[1]

¶ 4     A new judge then took over the case and presided over a four-day jury trial on liability.  During a jury instruction conference on the third day of trial, the parties agreed on a jury instruction asking whether Priebe's negligence was a cause of Reif's collision with Morales.  The answer to this question, they agreed, would show whether the jury believed Reif's theory of the case (that Priebe had

_____

[1] The district court's bifurcation order is not part of the record on appeal.

2

hit him first, pushing him into Morales) or Priebe's theory (that Reif had hit Morales first, independent of Priebe, and Priebe had only subsequently rear-ended him due to his sudden stop).

¶ 5     Priebe then advocated for a second jury instruction defining the two collisions (the one between Reif and Morales and the one between Priebe and Reif) as a single accident and asking the jury to apportion liability between Priebe and Reif for the three-car accident as a whole.  If the jury found that Reif's liability for the accident as a whole was fifty percent or greater, he reasoned, the case would be over.  Reif objected, arguing that the negligence involved in causing the two collisions had to be analyzed separately because, due to the bifurcation, the jury had not heard evidence about which collision caused which injuries.

¶ 6     The district court acknowledged Reif's concern, noting that the bifurcation had put the parties "in a jam" because Priebe's comparative negligence defense was that Reif's *injuries and damages* were the result of Reif's own negligence, and "there isn't necessarily a correlation between the fault of an accident versus the fault of an injury."  It reasoned, however, that Reif was claiming injuries and damages from the three-car accident as a whole:

3

Mr. Reif's claim is he was hurt in the accident, right? He's not parsing the hairs between the first and the second [collisions]. He's just saying, "I was hurt. I got crunched between two cars, and I got hurt."

¶ 7 The court determined that it could either declare a mistrial or allow the case to go to the jury, but that, if the case went to the jury, it would include Priebe's proposed question "defin[ing] the accident as . . . both collisions, and hav[ing] the jury allocate a percentage of fault for the accident." At that point, Reif moved for a mistrial. Priebe objected, and the court denied Reif's motion.

¶ 8 Ultimately, the jury was provided with four special verdict forms, labelled A, B, C, and D. Instruction No. 21 provided, in relevant part, as follows:

1. Was [Priebe's] negligence a cause of [Reif's] collision with Heather Morales?

If your answer is "no," then your foreperson shall complete only Special Verdict Form A and all jurors shall sign it.

4

The jurors completed and signed special verdict form A, indicating they had determined that Priebe's negligence was not a cause of Rief's collision with Morales.[2]

¶ 9     Instruction No. 5 provided as follows:

> As used in these Jury Instructions, the word "Accident" shall mean the accident that occurred on December 18, 2018, involving a 2018 Acura MDX driven by Heather Morales, a 2018 Subaru Outback driven by Plaintiff Carl [Reif], and a 2018 Acura TLX driven by Defendant Paul Priebe.  The word "Accident" shall include both collisions, one involving Plaintiff, Carl Reif, and Defendant, Paul Priebe, and one involving Plaintiff, Carl Reif, and Heather Morales.

¶ 10    Instruction No. 22 provided as follows:

> 1. Was [Priebe's] negligence a cause of the Accident?
>
> If your answer is "no," then your foreperson shall complete only Special Verdict Form C and all jurors shall sign it.

---

[2] If the jury had found that Priebe's negligence *was* a cause of Reif's collision with Morales, it was instructed to complete special verdict form B, which asked whether Reif was negligent; whether his negligence was also a cause of his collision with Morales; and, if the answers to the previous questions were all "yes," what percentage of the negligence involved in the collision between Reif and Morales was Priebe's and what percentage was Reif's.  The jury left special verdict form B blank.

5

On the other hand, if your answer is "yes," then you shall answer this question as well as the following questions on Special Verdict Form D and all jurors shall sign it.

2. Was the plaintiff, Carl Reif, negligent?

3. Was [Reif's] negligence, if any, a cause of the Accident?

If your answer to all three questions 1, 2, and 3 is "yes," then you shall also answer the following question 4 on Special Verdict Form D.

4. Taking as 100 percent the combined negligence of [Priebe] and [Reif] that caused the Accident, what percentage of the negligence was [Priebe's] and what percentage was [Reif's]?

¶ 11    The jurors left special verdict form C blank and completed and signed special verdict form D, indicating they had determined that (1) Priebe's negligence was a cause of the accident; (2) Reif was negligent; (3) Reif's negligence was also a cause of the accident; and (4) fifty percent of the negligence that caused the accident was Priebe's and fifty percent was Reif's.

¶ 12    Priebe filed a motion for entry of judgment, arguing that, under section 13-21-111, C.R.S. 2025, Reif could not recover any damages because his negligence was equal to Priebe's. Reif, in turn, moved for a new, non-bifurcated trial, arguing that the court

6

had erred by denying his motion for a mistrial and that the jury's verdicts were irreconcilably inconsistent. The court denied Reif's motion for a new trial and entered judgment in favor of Priebe.

¶ 13    Reif now appeals.

## II.    Bifurcation

¶ 14    Reif contends that the district court erred by bifurcating the trial so that liability and damages would be tried separately. We are not persuaded.

### A.    Governing Law and Standard of Review

¶ 15    Under C.R.C.P. 42(b), the district court may order a separate trial of any separate issue or claim if the court finds that separate trials will "further convenience, avoid prejudice, or promote judicial economy." *Martin v. Minnard*, 862 P.2d 1014, 1016 (Colo. App. 1993). Before deciding to bifurcate a trial, the court must analyze "the evidentiary and procedural nuances of [the] particular case," including potential prejudice to any party. *Gaede v. Dist. Ct.*, 676 P.2d 1186, 1188 (Colo. 1984).

¶ 16    The district court "has wide discretion to bifurcate trials, and absent a clear showing of abuse of discretion, the court's decision will not be disturbed." *Martin*, 862 P.2d at 1016 (citing *Prudential*

*Prop. & Cas. Ins. Co. of Am. v. Dist. Ct.*, 617 P.2d 556, 558 (Colo. 1980)). But the court's bifurcation order must "contain sufficient findings to establish whether it is based on any of the prerequisites [enumerated in] C.R.C.P. 42(b)." *Gaede*, 676 P.2d at 1189.

## B. Discussion

¶ 17 Reif argues that the district court erred by bifurcating the trial because his injuries were "highly probative of liability" and supported his theory of how the accident occurred. The bifurcation of liability and damages, he argues, prevented him from supporting his theory of the case with testimony from his retained medical expert, Dr. Rafer Leach, that his "injuries could only [have been] caused by [Priebe] rear-ending [him] before [his] car rolled into Morales' vehicle."[3]

---

[3] In his reply brief, Reif further claims that Dr. Leach's testimony would have supported and corroborated the testimony of his accident reconstruction experts regarding the order of the collisions. But the trial testimony of these experts does not appear to be included in the record. In any event, Dr. Leach's opinions do not address, much less corroborate, the order of the collisions.

8

¶ 18    Because the district court's bifurcation order is not part of the record on appeal, we are unable to review it.[4]  However, because the record does not support Reif's contention that Dr. Leach would have testified that his injuries could only have been caused by a first collision between Priebe and Reif followed by a second collision between Reif and Morales, we conclude that the district court did not abuse its discretion by ordering bifurcation.

¶ 19    Dr. Leach is an emergency room physician who was retained by Reif to review his medical records, conduct a physical examination, and provide a medical needs assessment report. Dr. Leach's report does not include any analysis pertinent to the order of the collisions.  Indeed, the totality of Dr. Leach's opinion regarding the cause of Reif's injuries was that "[t]he motor vehicle trauma occurring 12/18/2018 was clearly of sufficient mechanism and associated forces to cause cerebral concussion with loss of

---

[4] "It is the appellant's responsibility to designate the record on appeal, including such parts of the trial proceedings as are necessary for purposes of the contentions on appeal." *In re Marriage of Cardona*, 321 P.3d 518, 526 (Colo. App. 2010), *aff'd on other grounds*, 2014 CO 3.  Accordingly, we generally "assume that material portions omitted from the record would support the trial court's judgment." *Id.*  In this instance, however, it appears the bifurcation order may be lost.

consciousness, as well as injury to the spine and extremities."
Further, nothing in Reif's expert disclosures — which included a
detailed summary of Dr. Leach's anticipated testimony — suggests
that Dr. Leach would testify that Reif's injuries were probative of the
order in which the two collisions occurred.[5]

¶ 20 Accordingly, we conclude that the district court's decision to
bifurcate the trial was within its wide discretion. *See Martin,*
862 P.2d at 1016.

### III. Jury Instruction

¶ 21 Reif contends that the instruction asking the jury to allocate
fault for the three-car accident as a whole (1) misrepresented the
law on comparative negligence; and (2) prejudiced him by "leav[ing]
no room for a determination that Priebe was over 50% liable for the
collision with [Reif]," independent of Reif's collision with Morales.
Under the circumstances of this case, we disagree.

---

[5] At the time the court ruled on the motion for bifurcation, Reif's
expert disclosures, including Dr. Leach's expert report, had already
been filed with the court. Thus, the court was presumably aware of
their contents.

## A.    Governing Law and Standard of Review

¶ 22    "Trial courts have a duty to correctly instruct juries on all matters of law." *Banning v. Prester*, 2012 COA 215, ¶ 9.  We review de novo whether the instructions as a whole accurately informed the jury of the governing law, but we review a court's decision to give a particular instruction for an abuse of discretion.  *Id.*  "A trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence."  *Id.*

¶ 23    "We review a properly preserved objection to a jury instruction for harmless error."  *Herrera v. Lerma*, 2018 COA 141, ¶ 7 (citation omitted).  An instructional error is harmless unless it prejudices a party's substantial rights.  *Id.*  A party's substantial rights are prejudiced when the jury "might have answered differently if a proper instruction had been given."  *Banning*, ¶ 10.

## B.    Comparative Negligence

¶ 24    Reif argues that, by instructing the jury to consider "negligence . . . that caused the [a]ccident" rather than negligence that caused his injuries, Instruction No. 22 misrepresented the law

11

on comparative negligence.  We conclude that, under the facts of this case, any error was harmless.

¶ 25     Section 13-21-111(1) provides that

> [c]ontributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made.

Accordingly, the negligence that must be considered when comparing the negligence of a plaintiff and a defendant is "negligence resulting in death or in injury" — in other words, negligence that was a cause of the plaintiff's claimed injuries, damages, and losses.  *Id.*; *see City of Aurora v. Loveless*, 639 P.2d 1061, 1063 (Colo. 1981) ("In Colorado a finding of negligence does not create liability on the part of a defendant unless that negligence is a proximate cause of the plaintiff's injury."); *see also* CJI-Civ. 9:26B (2025) (asking the jury to determine whether the defendant's negligence, if any, and/or the plaintiff's own negligence, if any, was a cause of the plaintiff's injuries, damages, and losses).  This

scheme is reflected in Priebe's comparative negligence defense, which asserted that Reif's own negligence caused his "injuries and damages."

¶ 26 But Instruction No. 22 did not ask the jury to determine whether Priebe's negligence and/or Reif's own negligence, if any, was a cause of Reif's injuries, damages, and losses. Rather, the instruction asked whether each party's negligence was "a cause of the [a]ccident." The problem, Reif argues, is that, as the district court noted, "there isn't necessarily a correlation between the fault of the accident versus the fault of an injury."

¶ 27 As we understand the implication of Reif's argument, he is suggesting a hypothetical scenario where his own negligence, while a partial cause of the accident (i.e., Reif's collision with Morales), was *not* a cause of his injuries. That is, even if Reif was entirely at fault for his collision with Morales, it is possible that he was not injured in that collision and that *all* his injuries, damages, and losses were the result of Priebe separately rear-ending him. In this situation, the jury's finding on special verdict form D that Reif's negligence was "a cause of the [a]ccident" would not equate to a finding that Reif's negligence was a cause of his injuries, making it

13

inappropriate for the jury to apportion negligence between Priebe and Reif.

¶ 28    But the scenario described above was never Reif's theory of the case. Rather, his theory was that Priebe struck him from behind and pushed him into Morales, and that, as the district court put it, he was hurt by being "crunched between two cars." Indeed, in his complaint, Reif characterized the three-car accident the same way it was characterized in Instruction No. 22, as a single "crash" or "collision." His claim was that "[Priebe] caused the entire crash" and that he, Reif, was "injured in the subject collision." As he explained in his opening argument,

> What you're going to find is that throughout the entire time period this case has gone forward, Mr. Reif has always stated he . . . got hit [by Priebe] from the rear, and that's what caused him to be propelled into Ms. Morales. And that's what we believe the evidence will show.

¶ 29    Nor does Reif point to any evidence in the record that could support an inference that the accident occurred as outlined in the hypothetical above — a first, harmless collision between Reif and Morales, followed by a second collision between Priebe and Reif that caused all of Reif's injuries. Although the complete trial transcripts

14

are not part of the record on appeal, the district court noted during the jury instruction conference,

> [I]f I'm on the jury, . . . I don't only decide by a preponderance of the evidence, I decide beyond . . . a reasonable doubt that it was Reif who was mostly at fault here by hitting Morales. . . . [W]ith respect to [damage to] the vehicles, . . . if you want to ask me to direct a verdict now based on the evidence, I would say that the . . . evidence shows that it was Reif who slammed into Morales and . . . the effect, the net impact from Priebe to Reif, was negligible compared to the impact of Reif to Morales.

¶ 30    Accordingly, while there is a hypothetical situation in which "negligence . . . that caused the [a]ccident" would not equate to negligence that caused Reif's injuries, that is not the way this case was ever presented or argued.  We thus conclude that any error in the way Instruction No. 22 represented the law on comparative negligence was harmless.

## C.    Fault for the Priebe-Reif Collision

¶ 31    Next, Reif argues that Instruction No. 22 prejudiced him by "leav[ing] no room for a determination that Priebe was over 50% liable for the collision with [Reif]," independent of Reif's collision with Morales.  That is, because the instruction treated the two

15

collisions as a single accident, "[t]he jury [was] not given an opportunity to make findings on whether Reif was in any way at fault for Priebe rear-ending him." According to Reif, if the jury had had a chance to make this determination, it might have found either that Reif's negligence was not a cause of the Priebe-Reif collision or that Reif's negligence in causing that collision was less than Priebe's.

¶ 32 But again, as discussed above, Reif's claim was that he was injured in a three-car accident in which Priebe pushed him into Morales. He did not assert that there were two independent collisions, with separate injuries attributable to each, nor did the proposed testimony of his medical expert make such a distinction. Similarly, Priebe did not contend that there were two independent collisions. Priebe maintained that the Reif-Morales collision was an "integral component" of this case and that he "would not have rear-ended [Reif] had [Reif] not hit . . . Morales." Thus, both parties regarded the two collisions as part of a single interconnected accident.

¶ 33 Moreover, Reif does not point to any evidence in the record to support a jury instruction that would treat the Priebe-Reif collision

16

as a separate, independent collision.[6]  *See Melton v. Larrabee*, 832 P.2d 1069, 1072 (Colo. App. 1992) ("A party is entitled to a jury instruction only when it is supported by the evidence . . . .  Further, there must be more than a mere scintilla of evidence to support an instruction." (citation omitted)); *Devenyns v. Hartig*, 983 P.2d 63, 70 (Colo. App. 1998) (affirming the trial court's refusal to give a jury instruction that lacked evidentiary support).  Thus, Reif's proposed instruction asking the jury to determine the parties' respective negligence in causing the Priebe-Reif collision as a separate, independent collision was not supported by the evidence.

¶ 34     At the jury instruction conference, Reif argued that a jury should be given the opportunity to determine which of his injuries were caused by the Reif-Morales collision and which of his injuries were caused by the Priebe-Reif collision.  But while "[t]here is some debate over what is to be compared under comparative negligence — negligence [culpability] or causation," W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 67, at 474 (5th ed.

---

[6] Parties "should not 'expect the court to peruse the record without the help of pinpoint citations.'"  *O'Quinn v. Baca*, 250 P.3d 629, 632 (Colo. App. 2010) (citation omitted).

1984), Colorado's comparative negligence statute provides for a comparison of negligence, *see* § 13-21-111(1) (comparing the plaintiff's negligence with "the negligence of the person against whom recovery is sought"); *Reid v. Berkowitz*, 2013 COA 110M, ¶ 52 ("[T]he court must instruct the jury on comparative negligence and allow the jury to assess the relative degrees of the parties' fault.").

¶ 35    This view is consistent with other jurisdictions holding that in a comparative negligence system, it is the *culpability* of the conduct rather than the degree of causation by which damages are apportioned between the plaintiff and the defendant. *See State v. Kaatz*, 572 P.2d 775, 782 (Alaska 1977) ("What is to be compared is negligen[t] conduct, fault, culpability not causation, either physical or legal."); *Amend v. Bell*, 570 P.2d 138, 142 (Wash. 1977) (explaining that comparative negligence involves comparing the fault of the plaintiff with that of the defendant and that any damages awarded are reduced in proportion to the plaintiff's degree of fault); *Zuern v. Ford Motor Co.*, 937 P.2d 676, 682 (Ariz. Ct. App. 1996) ("Although causation (or physical contribution to the injury) is a necessary condition precedent to consideration of a person's

fault — i.e., the fault must have 'proximately caus[ed] or contribut[ed]' to the claimant's injuries to be considered — once causation is found the trier of fact must determine and apportion 'the relative degrees of fault' of all parties . . . ." (citations omitted)); *see also* William L. Prosser, *Comparative Negligence,* 51 Mich. L. Rev. 465, 481 (1953) ("Although there is a great deal of rather casual and careless language to the effect that the plaintiff's recovery must be diminished to the extent that his negligence has been 'causal,' or has 'contributed' to his injury, there seems to be little doubt that, once causation is found, the apportionment must be made on the basis of comparative fault rather than comparative contribution." (footnote omitted)); 1 Victor E. Schwartz & Kathryn Kelly, *Comparative Negligence*, § 17.01(a), at 336 (6th ed. 2020 & Supp. 2025) (commenting that "the jury's line of inquiry under comparative negligence does not focus on physical causation; rather, it considers and weighs culpability").

¶ 36 The relevant question, then, was not allocation of physical causation, as Reif argues — which collision caused which injuries — but the allocation of negligence. And the jury found that, "[t]aking as 100 percent the combined negligence of [Priebe]

and [Reif] that caused the [a]ccident," fifty percent of the negligence was Priebe's, and fifty percent was Reif's. This answer ended the case. *See* § 13-21-111(3) (stating the court must "enter a judgment for the defendant" if the plaintiff's degree of negligence is found to be "equal to or greater than the negligence" of the defendant).

¶ 37 For these reasons, we are not persuaded that the district court reversibly erred by instructing the jury to consider the three-car accident as a whole.

IV. Jury Verdicts

¶ 38 Reif contends that the jury's answers on special verdict forms A and D are "irreconcilably inconsistent." We disagree.

¶ 39 "Jury verdicts will not be reversed for inconsistency if the record reveals any basis to support them." *H & H Distribs., Inc. v. BBC Int'l, Inc.*, 812 P.2d 659, 663 (Colo. App. 1990). "[I]f there is a view of the case that makes the jury's answers consistent, they must be resolved that way." *Id.*

¶ 40 On special verdict form A, the jury indicated that Priebe's negligence was not a cause of the collision between Reif and Morales. On special verdict form D, the jury indicated that Priebe's negligence *was* a cause of the "accident," defined as "the accident

20

that occurred . . . includ[ing] both collisions, one involving [Reif] and [Priebe], and the other involving [Reif] and Heather Morales." Reif argues that "the verdicts are irreconcilable because where the accident is a combination of events, [Priebe] cannot be found liable for the [a]ccident (consisting of all collisions) but not liable in any way for the collision between Morales and Reif." Or, put another way, "[Priebe] can't be 50% responsible for the '[a]ccident' but not responsible at least in part for both collisions where the '[a]ccident' is a combination of collisions."

¶ 41 We discern no inconsistency in the verdicts. Rather, they simply reflect that the jury believed Priebe's theory of how the accident occurred — namely, that Reif first struck Morales, independent of Priebe, and thereby came to an abrupt stop, after which he was struck from behind by Priebe. Priebe's negligence thus played no part in the collision between Reif and Morales, as reflected in the jury's answer to special verdict form A. But, as Priebe admitted, his negligence was at least partly responsible for his subsequent collision with Reif, who initially acted negligently by braking suddenly and hitting Morales. Accordingly, as reflected in the jury's answer to special verdict form D, Priebe's negligence —

21

despite not causing the first collision — was one cause of the three-car accident.

¶ 42 Because the jury's answers on the special verdict forms are consistent, we discern no basis for reversal.

## V. Disposition

¶ 43 The judgment is affirmed.

JUDGE TOW and JUDGE SULLIVAN concur.